# Kerlin *versus* Campbell.

An act of Assembly having authorized a conveyance to be taken of an old court-house, prison, and work-house, and lots of ground, the conveyance to be taken *in trust, and for the use of the inhabitants of the county of Delaware, to accommodate the public service of the said county,* an *absolute* conveyance was made to the trustees, *for a valuable consideration,* and the trustees executed a declaration of trust of the same date, acknowledging the purchase money to have belonged to the county, and that the conveyance was made in trust as provided in the act. A subsequent act authorized the commissioners of the county to sell the said premises;—and the same were accordingly sold and conveyed in fee for *a valuable consideration: Held,* that the estate granted to the trustees was not a charity nor a base fee; but, being granted by an absolute conveyance, for a valuable consideration, the heirs at law of the first grantor were not entitled to recover the same from the last grantee.

ERROR to the Common Pleas of *Delaware county.*

This was an amicable action of ejectment, instituted by William Kerlin and others, the plaintiffs in error, who were plaintiffs below, against James Campbell, to recover possession of a part of the lot of ground in the borough of Chester, on which the old court-house

and prison of Delaware county were erected and still stand.   The plaintiffs were heirs of William Kerlin, deceased, by whom the land was conveyed, " for the use of the inhabitants of Delaware county, to accommodate the public service of the county," and the defendant was a purchaser, who claimed to hold under a deed made to him by the commissioners of Delaware county, pursuant to an act of Assembly, authorizing them to sell the old court-house and prison, and the lot on which they stand.   The defendant purchased and used the property for his private purposes.   The plaintiffs claimed that the property, *having ceased to be applied to the public uses for which it was conveyed,* belonged to them.

The parties agreed to a case stated.   After argument, the court below rendered judgment for the defendant, whereupon the plaintiffs sued out a writ of error.

*In the Court of Common Pleas of Delaware County.*

| | |
|---|---|
| William Kerlin, Abraham Kerlin, John W. Odenheimer, George W. Piper, Augustus Piper, John K. Zeilin, and Caroline, his wife, in right of said Caroline, John Cloak, and Sarah Louisa, his wife, in right of said Sarah Louisa, *vs.* James Campbell. | To February Term 1851. No. 31. Ejectment. |

It is hereby agreed that an amicable action, in the above form, be entered in the Court of Common Pleas of Delaware county, to be of the same effect as if a summons had been regularly issued and returned served by the sheriff; and that the following statement of facts to be considered in the nature of a special verdict, be submitted for the judgment of the court, with the privilege of either party to sue out a writ of error.

The county of Chester having been for more than fifty years in the occupation of a lot of land *in the borough of Chester,* on which a court-house and prison had been erected and used, an act of Assembly, and subsequently a supplement to the same, were passed, providing for the removal of the seat of justice to West Chester, and the sale of the said lot and the public buildings thereon.   The following are extracts from said acts, so far as they relate to the sale and conveyance of this property.

An act to enable William Clingan, Thomas Bull, and others, *to build a new court-house and prison* in the county of Chester, *and sell the old court-house and prison* in the borough of Chester, passed 20th March, 1780 :—

Sec. 4.   " That it shall and may be lawful that the said William Clingan, Thomas Bull, John Kinkead, Roger Kirk, John Sellers, John Wilson, and Joseph Davis, or any four or more of them, shall

[Kerlin *v.* Campbell.]

have full power to expose to sale, by public vendue to the highest bidder, the old court-house, prison, and work-house, with all and singular the appurtenances and hereditaments thereunto belonging, situate in the borough of Chester aforesaid, and to give assurances to the heirs and assigns of the purchaser or purchasers for ever; and the moneys therefrom arising shall be appropriated towards paying for the lands to be purchased, and the new court-house and prison to be built in the said place, so as aforesaid to be provided."

Supplement to the above act, passed March 22, 1784:—

Sec. 2. "That John Hannum, John Taylor, and John Jacobs be and they hereby are constituted and appointed commissioners, for the purpose mentioned and expressed in the act entitled 'An act to enable William Clingan, Thomas Bull, John Kinkead, Roger Kirk, John Sellers, John Wilson, and Joseph Davis to build a new court-house and prison in the county of Chester, and sell the old court-house and prison in the borough of Chester;' and that they, or any two of them, shall be and they hereby are empowered and authorized to carry the said act and every part thereof into execution, as fully and amply as by the before-mentioned act the said William Clingan, Thomas Bull, John Kinkead, Roger Kirk, John Sellers, John Wilson, and Joseph Davis, or any four of them, might or could have done."

In the case stated was set forth the deed made by Hannum, Taylor, and Jacobs to William Kerlin, of the borough of Chester, innkeeper, to whom they had sold the property for the sum of £415; to have and to hold the said old court-house, prison, and work-house, and the lot or lots of land thereunto belonging, &c., "unto the said William Kerlin, his heirs and assigns, to the only proper use and behoof of the said William Kerlin, his heirs and assigns for ever." Deed dated 18th March, 1788.

William Kerlin took possession of the property conveyed by the said deed, and held it from the 18th of March, 1788, until the 3d of November, 1789. In the mean time, the county of Delaware was erected out of part of Chester county, and the seat of justice of the new county fixed, by law, at Chester. To enable William Kerlin, *who, at the time, owned and kept a public-house on the opposite side of the main street of the town from the public buildings,* to convey the same, and the lot on which they stood, for the use of the new county, an act was passed, from which the following is an extract.

Section 9th of an act passed 26th September, 1789—*Smith's Laws,* vol. 2, page 503. "An act for dividing the county of Chester," &c.

"And whereas it is represented to this Assembly by the petitioners, that they have contracted and agreed with the present owner of the old court-house, prison, and work-house, in the said borough of Chester, for the purchase thereof, at a price far beneath

[Kerlin *v.* Campbell.]

what such buildings could be erected for, which they are willing and desirous should be conveyed for the use of the county, on repayment of the sum agreed upon; be it therefore enacted, &c., That it shall and may be lawful to and for Henry Hale Graham, Richard Riley, Josiah Lewis, Edward Jones, and Benjamin Brannon, or any three of them, to take conveyances and assurances to them, and their heirs, of the said old court-house, and of the prison and work-house, in the said borough of· Chester, with the lots of ground thereunto belonging, in trust, *and for the use of the inhabitants of the said county of Delaware, to accommodate the public service of the said county.*"

A deed was made in pursuance of the last act, by William Kerlin and wife, to Henry Hale Graham, Riley, Lewis, Jones, and Brannon, and to their heirs and assigns, of the aforesaid old courthouse, prison, and work-house, situate in the borough of Chester, in the new county of Delaware, for the consideration of £693 3*s.* 8*d.*, to have and to hold the same to them, *their heirs and assigns for ever.* General warranty. Deed dated the 3d November, 1789. A declaration of trust, *of the same date,* was executed by Graham, Riley, Lewis, Jones, and Brannon, which referred to the deed by William Kerlin and wife, and containing the following:—

"Now know ye, that we, the said Henry Hale Graham, Richard Riley, Josiah Lewis, Edward Jones, and Benjamin Brannon, do hereby acknowledge and declare that our names were inserted in the said recited indenture, by the special nomination and appointment of the representatives of the freemen of the Commonwealth of Pennsylvania, in General Assembly met, by an act passed by them, on the 26th day of September, last past, entitled, 'An act for dividing the county of Chester, and to· erect part thereof into a separate county.' And that the consideration moneys mentioned in the said recited indenture were and are the proper moneys of the freemen and inhabitants of the said county of Delaware. *And that the said recited indenture was so made or intended to us, in trust and for the use of the inhabitants of the said county of Delaware, to accommodate the public service of the said county, according to the intent and true meaning of the said recited act of Assembly ;* and we do hereby further declare and acknowledge, that we do not claim to have any right or interest in the said court-house, prison, and work-house, and the lot or lots of land thereunto belonging, or in any of them, to our own separate use or benefit, *by the said indenture or conveyance so made to us or otherwise, but only to and for the uses and services hereinbefore mentioned, expressed, and declared, and to and for no other use, interest, or purpose whatsoever.* In witness whereof, we have hereunto set our hands and seals, dated the third day of November, in the year of our Lord one thousand seven hundred and eighty-nine."

Signed and sealed by H. H. Graham and others.

[Kerlin *v.* Campbell.]

The county of Delaware continued to use and occupy the said lot and public buildings for the public service of the county from the third day of November, 1789, until the twenty-fifth day of February, 1851, when, in pursuance of an act of Assembly passed the third·day of March, 1847, for the removal of the seat of justice to Media, and for the sale of the said lot and public buildings, a part of said lot and the old work-house were sold and conveyed to John Campbell, (*prout* act,) of which the following is an extract:—" They, the commissioners of the county of Delaware, shall also have full power and authority to sell, at public auction, at such time and upon such terms as they shall deem most conducive to the public interest, all the real estate and public buildings belonging to the said county of Delaware, in the borough of Chester, the proceeds whereof shall be paid into the treasury of the said county."

The commissioners of Delaware county sold the premises to James Campbell, for $1500, and conveyed the same to him by deed, dated the twenty-fifth day of the second month, in the year 1851, and he took possession.

The deed declared " that the said county of Delaware, for and in consideration of the sum of $1500, unto the said commissioners in hand paid by the said James Campbell, hath granted, &c. all that certain lot of ground, (describing the premises,) to the proper use and behoof of the said James Campbell, his heirs and assigns for ever."

It was stated, in the case stated, that the plaintiffs are the heirs at law of the said William Kerlin, who died in the year 1800. If the court shall be of opinion that the plaintiffs are entitled to recover, judgment is to be entered for them for the land embraced in said last-mentioned deed, with costs.

If the court shall be of opinion that the plaintiffs are not entitled to recover, then judgment is to be entered for the defendant, with costs.

As before stated, the court below rendered judgment for the defendant.

It was assigned for error :
1. The court erred in rendering judgment for the defendant.
2. The court ought to have rendered judgment for the plaintiff.

The case was argued by *Lewis*, with whom was *Broomall.*—At the date of the deeds of November 3, 1789, William Kerlin was an innkeeper, owning and occupying a large tavern property immediately opposite the lot in question, on the main street of the town of Chester. The price which he had agreed to accept in consideration of a conveyance of the land, was far beneath what such buildings could be erected for, and that is stated in the preamble

[Kerlin *v.* Campbell.]

to the section of the act authorizing the purchase, as a reason why the legislature should sanction the contract and make provision for its consummation. The uses for which the conveyance was to be made are also stated; thus clearly showing that the particular purposes to which the property should be applied were well understood between the parties, for months before the conveyance was executed.

The consideration moving the grantor may be therefore readily inferred. He gave the grantees a bargain in their purchase, that he might have the advantage of an increase of business at his tavern, arising from its proximity to the court-house. It was of the utmost importance to him that the property should be used in the manner contemplated by the contract, as it was only by means of its being so used that he could hope to obtain compensation for his sacrifice.

William Kerlin agreed to sell for public uses, and for those only; and the other contracting party, acting, not for themselves, but as public agents, agreed to buy for the same uses: and care was taken that the objects had in view should be fully and clearly expressed.

The two deeds of November 3, 1789, made in conformity with the provisions of the act then recently passed, declare the intent of the parties. Being executed at the same time, and relating to the same subject-matter, they are to be considered as one instrument, and construed together: Stoever *v.* Stoever, 9 *Ser. & R.* 434; Colwell *v.* Woods, 3 *Watts* 188.

Considering, then, these deeds as a single transaction, they constitute a conveyance from William Kerlin to Henry Hale Graham and others, in trust to and for the use of the inhabitants of the county of Delaware, to accommodate the public service of the said county, according to the intent and true meaning of the said act of Assembly, and to no other use, intent, or purpose whatsoever.

2. The estate which the trustees took was *a base or determinable fee*, which is defined to be an interest which may continue for ever; but the estate is liable to be determined, without the aid of a conveyance, by some act or event circumscribing its continuance or extent; 4 *Kent* 9; 2 *Crabbe on Real Property*, page 10, pl. 954; *Preston on Estates* 431.

No negligence of a trustee will determine a charity; but when all the objects of the charity are answered, or it ceases to have a subject upon which to expend itself, the estate expires, which is limited for its use. Here the *cestuis que use* have had all they mean to take out of the grant. They have procured the authority of the legislature for abandoning the use of the land, and resolved that its appropriation to the public service shall cease.

It is no longer needed for the uses for which it was intended to be applied, and for sixty years has been applied; and by the terms

[Kerlin *v.* Campbell.]

of the conveyance the limitation takes effect. This view is consistent with all the authorities: Master *v.* McCord, 5 *Watts* 493; Kirk *v.* King, 3 *Barr* 436; Wright *v.* Lion, 9 *Barr* 433.

*Darlington* and *Meredith,* for defendant in error.—This was a purchase, not a trust; but if a trust, it does not follow that a violation of the trust works a forfeiture of the estate. The trust may be enforced by some legal tribunal. The legislature is our court of chancery, and they may apply the land to the public service of the county, in such a way as is most beneficial to the public.

1. William Kerlin, by his deed, granted the premises to Henry Hale Graham and others, for a valuable consideration, in absolute fee simple, without any condition. The declaration of trust made by the grantees, subsequent to said grant, cannot make the grant conditional. The rule is, "A condition must always be by the same deed, or by deed indented at the same time:" *Shep. Touch.* 126. The estate granted was not a conditional estate, and has not reverted to Kerlin or his heirs: *Cro. Eliz.* 288; 9 *Barr* 433–437; 9 *Watts* 16.

*Lewis,* in reply.—We dispute that the legislature directed the whole estate to be sold. They authorized the county to sell only their title.

April 21, 1851.

PER CURIAM.—The doctrine of charitable uses is inapplicable to a question like the present. Had the ancestor of the plaintiffs conveyed the property as a gratuity to be used in a particular way, they might have had a plausible case on the cessation of the user; but he conveyed it for its value, by an absolute deed, to persons who executed a declaration of trust, not for his benefit, but to vest the equitable ownership in the county. After that, it is impossible to conceive of a dormant interest in him. The two deeds, though executed at the same time, were as diverse as if the latter were a conveyance of the legal title to a stranger, with whom the grantor in the first could not be in privity. There could be no resulting trust, for every part and particle of the grantor's estate, legal or equitable, present or prospective, had passed from him and was paid for. Nor was the estate granted a base fee. It was unclogged with conditions or limitations. The ancestor received a full consideration for it; and the plaintiffs cannot rescind the bargain.

Judgment affirmed.