## SHARP v. CITY OF GUTHRIE *et al.*

No. 6213.    Opinion Filed October 12, 1915.

(152 Pac. 403.)

1. **PUBLIC LANDS—Patent—Construction—Title.** An absolute alienable title was acquired by the city of Guthrie under a patent purporting to convey to said city lands which had been purchased pursuant to Act May 2, 1890, c. 182, 26 Stat. 81, and other acts of Congress relating thereto, authorizing the entry of said lands at the minimum price, "for parks, schools and other public purposes," and providing, "that patents for such reservations to be maintained for such purposes," should be issued to the towns, respectively, when organized as municipalities.

2. **PUBLIC LANDS—Patents—Construction—Extrinsic Evidence— Conclusiveness.** Where the officers of the government, acting within the lawful scope of their authority, have issued a patent in due form of law which on its face is sufficient to convey title to the land described therein, such patent is conclusive upon the courts, except in direct proceedings, and the recitals thereof are conclusive as to the estate conveyed, and other evidence cannot be received to aid in the construction thereof.

3. **MUNICIPAL CORPORATIONS—Lands Subject to Trust—Sale —Legislative Power.** It is within the power of the Legislature to relieve a city from a trust in lands held for public purposes and to authorize a sale free therefrom when the title in fee is in the city.

4. **MUNICIPAL CORPORATIONS—Public Park—Power to Sell— Charter.** The charter of the city of Guthrie, prepared and adopted pursuant to article 18 of the Constitution, and the act of March 22, 1908 (Laws 1907-08, c. 12), vest in said city, under section 8, power to sell a public park, the fee-simple title of which, without limitation, is in the city.

(Syllabus by the Court.)

Turner, J., dissenting.

*Error from District Court, Logan County;*

*A. H. Huston, Judge.*

Action by E. G. Sharp against the City of Guthrie and others. Judgment for defendants, and plaintiff bring error.

On rehearing. Affirmed. Former opinion, published in 145 Pac. 764. withdrawn.

*Hepburn & Chappell* and *Devereux & Hildreth,* for plaintiff in error.

*Dale & Bierer* and *Tibbetts & Green,* for defendants in error.

HARDY, J. On May 23, 1913, E. G. Sharp, plaintiff in error, a resident taxpayer of the city of Guthrie, in the district court of Logan county, sued defendants in error, in effect, to enjoin the city from conveying what is known on the official plat of the city as "Capitol Park," to the Methodist University for the sum of one dollar. There was trial of the cause to the court and judgment for defendants, and plaintiff brings the case here.

The first question to be determined is whether the lands involved are impressed with a trust for park purposes so as to prevent conveyance by the defendant city, as was attempted to be done. The determination of this question involves a consideration of the various acts of Congress under which the lands were acquired by the city of Guthrie. By section 13, Act March 2, 1889, c. 412, 25 Stat. 1005, the Secretary of the Interior was authorized to permit entry of public lands in Oklahoma Territory for town-site purposes under sections 2387, 2388, Rev. St. U. S. (U. S. Comp. St., secs. 4791, 4792); no entry to embrace more than one-half section of land. Section 2387, referred to, provided that where lands may be settled upon and occupied as a town site, same may be entered for town-site purposes at the minimum price, in trust for the use and benefit of the occupants thereof; and section 2388 provides that a declaratory statement of the purpose of the inhabitants to enter the lands as a town

site should be filed with the register of the proper land
office.   The minimum price at which lands were authorized
to be entered under these sections was $1.25 per acre.   On
May 2, 1890, Congress passed the Organic Act for Okla-
homa Territory (26 Stat. 81), under section 22 of which
it was provided that reservations may be made for parks,
schools and other public purposes, and that patents for
such reservations to be maintained for such purposes
should be issued to the towns, respectively, when organ-
ized as municipalities.   By Act May 14, 1890, c. 207, 26
Stat. 109 (U. S. Comp. St. 1913, section 5029) provision
was made for the appointment of three trustees, with
authority to enter town sites for the use and benefit of the
occupants thereof, and for assessment upon the lots of a
sum sufficient to pay for the lands reserved in such town
sites, cost of surveying the lands, compensation of trustees,
and other necessary expenses.   Pursuant to the provisions
of this statute, trustees were appointed, and a plat filed
by them in the proper land office December 16, 1891, enter-
ing the land involved, together with other lands, as a town
site for the proposed town of Capitol Hill, which plat was
later filed with the register of deeds of Logan county.   On
July 31, 1894, these trustees executed a deed to the city
of Guthrie purporting to convey the lands in controversy,
in which it was recited that the cost incurred in connec-
tion therewith, amounting to $46, had been paid, and,
further, that said city was—

"to have and to hold, and maintain, the same for the sole
and separate use and benefit and purpose of a public park
for public uses and none other."

It having been discovered that this deed was ineffect-
ual to convey title to the municipality, same was recalled
and canceled, and on April 3, 1913, patent was executed

by the President, conveying said lands to the municipality. This was by reason of the fact that, under the act of May 14, 1890, the trustees were not authorized to convey the lands in question. *City of Perry*, 22 Land Dec. Dept. Int. 367. The patent of April 3, 1913, purports to have been issued pursuant to the provisions of section 22, Act May 2, 1890, *supra*, and the conveying clause is as follows:

"Now, know ye that there is therefore granted by the United States unto the city of Guthrie, the tracts of lands above described, to have and to hold said tracts of land with the appurtenances thereof unto the said city of Guthrie, and to its successors forever."

It will be noticed that the patent simply makes reference to section 22 of the act of May 2, 1890, and that there is no trust imposed or condition coupled with the terms of conveyance in the patent.

Plaintiff in error contends that the lands are impressed with a trust for park purposes, while defendant in error says this is not so, but on the contrary, the city took a fee-simple title, free from any trust or condition, and with the power of alienation.

The facts in this case are very similar to the case of *Morgan v. Rogers et al.*, 79 Fed. 577, 25 C. C. A. 97, in which case the city of Denver, by Act of May 21, 1872, c. 187, 17 Stat. 140, was authorized to purchase certain lands in Colorado for cemetery purposes, to be entered by the mayor of said city at the minimum price. The act was entitled, "An act to enable the city of Denver to purchase certain lands in Colorado for cemetery purposes," and provided:

"That the mayor of the city of Denver, in Colorado Territory, be, and he is hereby authorized to enter through the proper land office, at the minimum price per acre, the

following lands belonging to the United States [describing them], being 160 acres of land, lying adjacent to said city of Denver, to be held and used for a burial place for said city and vicinity."

The lands were entered and paid for, and on November 15, 1873, patent was duly issued, conveying to Joseph E. Bates, mayor of the city of Denver, and to his successors and assigns forever, the lands described, including the lands aforesaid, in trust for the city of Denver. The patent contained no reference to the use to which the land was to be put. On January 25, 1890 (26 Stat. 2, c. 3), Congress passed an act which referred to the previous act of May 21, 1872, and confirmed the patent theretofore issued, and further provided:.

"That the  *  *  *  city of Denver be, and it is hereby, authorized to vacate the use of said land, or any part thereof, as a cemetery, and to appropriate and use the same  *  *  *  for a public park or grounds," and to no other purpose.

The lands involved therein had been conveyed to the Roman Catholic Bishop of the Diocese of Denver, and on April 25, 1887, a portion thereof had been conveyed to the defendant Morgan, who had entered thereon and platted same as an addition to the city of Denver. Ejectment was brought by the mayor of the city against the defendant, and on demurrer to the petition the trial court overruled the demurrer and rendered judgment in favor of plaintiffs, and upon error to the Circuit Courts of Appeals, this judgment was reversed, and in the opinion the court said:

"(1)  The act of Congress of May 21, 1872, to enable the city of Denver to purchase certain land in Colorado for cemetery purposes, and authorizing the mayor of the city of Denver to enter the designated 160 acres at the

land office at the minimum price, to be held and used as a burial place by said city and vicinity, did not operate to annex any condition to the grant so authorized. Conditions subsequent are not favored, and the terms used must clearly show that it was intended that the grant should be on condition, or they will not be construed to have that effect. In this case, although the use to which it was expected the land would be put is mentioned, it is rather as an explanation of the reason for permitting such an unusual entry of the land by a municipal corporation than for any other purpose. There are no words restricting the use to that mentioned, nor providing for forfeiture in case the land is put to other use. (2) The patent by which the title to this land was conveyed conveys the land absolutely, in fee, and without any mention of any use whatever."

This case was appealed to the Supreme Court of the United States, and in *Wright v. Morgan,* 191 U. S. 55, 24 Sup. Ct. 6, 48 L. Ed. 89, the judgment of the Circuit Court of Appeals was affirmed. In the opinion it is said:

"The act of Congress approved May 21, 1872 (17 Stat. 40, c. 18) was entitled 'An act to enable the city of Denver to purchase certain lands in Colorado for a cemetery,' and it authorized the mayor of the city to enter, at the minimum price, certain lands, including the land in question, 'to be held and used for a burial place for said city and vicinity.' The price was paid and a patent was issued purporting to convey to the 'mayor in trust for said city and to his successors' the said land, not referring to the above act otherwise than by the words in 'conformity with the several acts of Congress in such cases made and provided.' This patent was confirmed by an act of Congress approved January 25, 1890 (26 Stat. L. 2, c. 3), and the city of Denver was authorized to 'vacate the use of the said land, or any portion thereof, as a cemetery, and to appropriate and use the same or any part thereof for a public park or grounds.'"

And, after reviewing the facts, the opinion continues:

"If the legal title was in the city, it was an absolute title. In view of the extreme unwillingness of courts to admit the existence of a common-law condition, even when the word 'condition' is used, it needs no argument to show that there was no condition or limitation here. *Stuart v. Easton*, 170 U. S. 383, 18 Sup. Ct. 650, 42 L. Ed. 1078. Little more needs to be said to show that the act of Congress did not make the land inalienable at common law. We need not consider whether the act could have that effect upon land within the state, when the conveyance was absolute and was made to a citizen or instrumentality of the state. We express no opinion upon the point. It is enough that it did not purport so to restrict the ordinary incidents of title. We should require the clearest expression of such an unusual restriction before we should admit that it was imposed, especially in an ordinary sale for cash. Here the act probably meant no more than to explain the motive for a sale at the minimum price. *Mahoning County v. Young*, 8 C. C. A. 27, 59 Fed. 96. The ratified patent said nothing of any restriction, or even any trust, beyond the one executed in the statute."

In the case at bar the patent of April 8, 1913, simply makes reference to section 22 of the act of May 2, 1890, and conveys the title in fee, without any restriction or condition attached thereto. It seems reasonable to say, as was said by the Circuit Court of Appeals and by the Supreme Court, in the case just referred to, that the language in the act, "that reservations may be made for parks and other purposes," probably meant no more than to explain the motive for a sale under the circumstances, at the minimum price, which was paid for the land. *Newbold v. Glenn*, 67 Md. 490, 10 Atl. 242; *Stuart v. Easton, supra; Wright v. Morgan, supra; Mahoning County v. Young, supra.* This appears to be an ordinary

sale for cash, and is a conveyance of the title with no re-
strictions upon its use, nor right to re-entry for condition
broken; and, in view of the strong disinclination of the
courts to annex conditions or restrictions in the absence
of a clear expression of such intent upon the part of
Congress, it would seem; to be the duty of the court to
hold that no such condition or restriction was intended.
*Stuart v. Easton, supra; Newbold v. Glenn, supra; Wright
v. Morgan, supra; Fordyce v. Woman's Christian National
Library Ass'n*, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N.
S.) 485; 2 Devlin on Deeds, section 971; 8 R. C. L.
sections 173, 174.

In *Owen et al. v. City of Tulsa et al.*, 27 Okla. 264,
111 Pac. 320, plaintiffs brought action to enjoin a sale by
the city of Tulsa of certain lands which had been pur-
chased by the city for park purposes. The city, pur-
suant to a vote of the electors, had issued bonds for the
purpose of purchasing the park, and had acquired the
premises involved, and thereafter laid out said lands as
a park, and improved the same at the public expense, for
use as a park. The injunction was denied, for the reason
that the city charter provided that the city might take,
hold, and purchase lands as they might be needed for cor-
porate purposes, and might sell any real estate owned
by it.

The case of *Seattle Land & Imp. Co. v. City of
Seattle*, 37 Wash. 274, 79 Pac. 780, is an interesting case
upon this subject. Appellant there brought an action to
enjoin the city from diverting the use of certain lands to
another purpose than that for which it was claimed the
lands were acquired by the city. The city under an ordi-
nance had condemned the lands through proper proceed-

ings, for certain purposes, and for use as a public park. Instead of using the premises for a park, the city authorities decided to erect an "in-town terminal substation" in connection with the city's lighting plant.   The injunction was denied, and the court said:

"It is doubtless the law that, where a person dedicates or donates to a city a tract of land, with a restriction upon its use—as, for instance, where it is so dedicated or donated solely for a park or a public street— the city cannot lawfully divert the use of such property to uses and purposes inconsistent with the purpose of such grant; and, in cases where a city has acquired property for the purpose of a public park, and the payment thereof is made by means of special assessments levied upon neighboring property specially benefited by reason of the acquiring and using of said property for such purposes, that the owners of said property thus specially assessed may, in a proper case, prevent such property from being used in a manner that would destroy its use and enjoyment for the purposes for which it was acquired. But where property is taken and paid for from the general fund, with the intention of using it for a certain purpose specified in the ordinance authorizing the taking, as was done in this case, the city doubtless has the authority to change said contemplated use to another and entirely different use whensoever the needs and requirements of the city suggest."

And after reviewing the authorities upon this question, the court continues:

"An examination of the authorities cited by the respective parties hereto, and such others as we have been able to examine, shows that a clear distinction is observed between those cases where the fee of the property is acquired (by purchase, condemnation, or otherwise) and those cases wherein the city obtains merely an easement; also between cases where the full purchase price is paid by the city from its general fund, and those cases where

the property is dedicated or donated for some specific public use, or conveyed with some restriction, or where payment is provided by assessment upon neighboring property specially benefited by the contemplated use. In the case at bar the city acquired the full and complete legal title in fee to this property, without restriction of any kind, and paid, so far as the record shows, the full value therefor from the general fund. It was not a dedication or donation or a conveyance to the city with any limitations or restrictions. The city having thus acquired the property and, in its wisdom, decided thereafter that the contemplated use should be changed, and that its welfare and necessities required a use for economic purposes, we are unable to find any authority authorizing the appellant to interfere with the respondents' actions in this direction. *Brooklyn Park Com'rs v. Armstrong,* 45 N. Y. 234, 6 Am. Rep. 70; *Curran v. Louisville,* 83 Ky. 628."

To the effect that, where lands are donated or dedicated to the public with restrictions upon its use, as for streets or parks or other public purposes, it cannot lawfully be diverted to other uses and purposes inconsistent with the grant are the following cases cited by plaintiff in error: *Headley v. San Francisco,* 124 U. S. 639, 8 Sup. Ct. 659, 31 L. Ed. 553; *City of Cincinnati v. White,* 6 Pet. 431, 8 L. Ed. 452; *New Orleans v. United States,* 10 Pet. 662, 9 L. Ed. 573; *Perry Pub. Lib. Ass'n et al. v. Lobsitz et al.,* 35 Okla. 576, 130 Pac. 919; Elliott on Roads and Streets, 91. And to the effect that the grantor cannot revoke the dedication and recover the lands after the dedication has been accepted and the property improved with money raised by taxation in reliance upon the dedication is the holding in *Davenport v. Buffington,* 97 Fed. 234, 38 C. C. A. 453, 46 L. R. A. 377.

In the instant case there was not a donation or dedication within the rule of any of the decisions relied upon.

There was no special assessment upon adjoining property to pay for the lands in controversy, or to improve the same, and the title in fee simple having been conveyed to the city for value, without restriction or condition, there was nothing to prevent it from changing the contemplated use thereof, if otherwise properly authorized by law. *Wright v. Morgan, supra; Morgan v. Rogers, supra; Seattle Land & Imp. Co. v. Seattle, supra; Owen v. Tulsa, supra.*

The provision in the patent issued by the trustees on July 31, 1894, cannot operate to impress a trust upon the lands, nor annex a condition to the grant, for the reason that same was recalled and canceled. Being void for want of authority to execute it, it could have no binding effect. *Doolan v. Carr,* 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; *Oklahoma City v. Hill Bros.,* 6 Okla. 114, 50 Pac. 242.

The Secretary of the Interior is vested by law with the power of general supervision in matters relating to the sale and disposal of public lands, and in matters of this kind the action of the political department of the Government, when exercised within the lawful scope of its authority, is conclusive upon the courts, except in a direct proceeding. *Knight v. U. S. Land Ass'n,* 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; *Cragin v. Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566.

Under these decisions the action of the Secretary of the Interior in recalling and canceling the first patent and in causing the second to be issued cannot be questioned in this proceeding. The first patent, being void, cannot be invoked to import conditions in the second conveyance not contained therein, and his action in issuing the second

patent is not questioned.    There is no controversy as to
the principle that when the officers of the government
have issued a patent in due form of law, which on its face
is sufficient to convey the title to the land described in it,
such patent is to be treated as valid in actions of law
(*Doolan v. Carr, supra; County Commissioners Blue
Earth County v. St. P. & S. C. R. Co.*, 28 Minn. 503, 11
N. W. 73), and the recitals of a patent are conclusive as
to the estate conveyed by it, and other evidence cannot be
received to aid in the construction thereof. *Stuart v.
Easton, supra.*

The trust to be effectuated by recalling and canceling
the patent issued by the trustees and the issuance of the
second patent was to effect a conveyance of the govern-
ment title to the municipality, and not to insure the use
of the property for park purposes.   The town site had
been entered by the trustees, in trust for the individual
occupants and the municipality, and they were charged
with the duty of surveying, platting, and selling the lots
and conveying title to the individual occupants, but were
not authorized by law to convey title to lands reserved for
the public use, as were the premises in controversy, and
for this lack of authority on their part to effectuate the
trust created by the act, that is, the conveyance of the
government title to the municipality, the patent under-
taken to be executed by them was recalled and canceled,
and the second patent was issued for the purpose of con-
veying to the municipality the government title, and when
this was done the trust was fully executed.

Another reason why the action of the trial court
should not be reversed is that if, by the act of Congress,
May 2, 1890, said lands were impressed with a trust,

Congress could relieve the city of the obligation to hold said lands for park purposes, and the city, if otherwise authorized by law, could alienate said lands. On March 4, 1915 (Act March 4, 1915, c. 190, 38 Stat. 1219), being subsequent to the date of the former opinion herein, the President approved an act of Congress which is as follows:

"An act quieting title to a certain tract of land  *  *  * in the city of Guthrie, Oklahoma.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

"That for the purpose of removing a cloud from the title to that certain tract of land located in the city of Guthrie, state of Oklahoma, and more particularly described as follows, to wit: A tract of land six hundred and eighty feet square, containing ten and sixty-two one-hundredths acres, located within that part of the city of Guthrie, Logan county, Oklahoma, formerly known as Capitol Hill, and bounded as follows: On the north by Cleveland avenue, on the east by Drexel Boulevard, on the south by Harrison avenue, on the west by Capitol Boulevard, designated and known on the official plat as Capital Park, whatsoever right, title, or interest the United States may have in and to said tract of land by reason of escheat or otherwise, be, and the same is hereby, released and quitclaimed unto said city of Guthrie."

The principle that it is within the power of the Legislature to relieve a city from a trust in lands held for public purposes where the fee is in the city, and to authorize a sale free therefrom, is established in the following cases: *Clark et al. v. City of Providence,* 16 R. I. 343, 15 Atl. 763, 1 L. R. A. 725; *Kerlin v. Campbell,* 15 Pa. 500; *Brooklyn Park Com'rs v. Armstrong,* 45 N. Y. 234, 6 Am. Rep. 70; *Seattle Land & Imp. Co. v. Seattle,* 37

49—8

Wash. 274, 79 Pac. 780; *City of Brooklyn v. Copeland,* 106 N. Y. 496, 13 N. E. 451; *Jones v. Currie,* 34 La. Ann. 1093; 2 Dillon, Mun. Corp. (4th Ed.) 651.

The property in question having been purchased and paid for, and patent executed conveying the title to the city in fee simple without condition or restriction, and the purchase price not having been raised by virtue of any special assessment upon abutting property, and plaintiff's property not having been burdened or incumbered with any assessment for the improvement thereof, other than that imposed generally upon the property of others within the city, the right of the city to sell the property is established, if it had authority under its charter so to do. It appears that the city of Guthrie had adopted a charter, under the provisions of section 3a, art. 18, of the Constitution (section 329, Wms. Ann. Const.) by section 8 of which it is provided:

"The board of commissioners shall have power to purchase and acquire any property, real, personal or mixed, which it deems to the best interests of the city, and shall have power to sell and dispose of any property, real, personal or mixed, now or hereafter owned by said city. But the power herein granted shall at all times be subject to the following limitation, namely; where the value of the property sought to be purchased or sold exceeds the sum of five thousand dollars, the question of its purchase or sale shall first be submitted to the electors of said city at an election called for that purpose. * * * "

In pursuance of this provision an election was duly held, at which the question was submitted to the electors of said city whether said property should be sold, and on the 9th day of May, 1913, at said election a majority of the electors voting therein voted to authorize the sale of the property according to the proposition then submitted,

and on the 16th day of May, 1913, the deed in question was executed and placed in escrow with the defendant Guthrie Savings Bank, to be delivered when the defendant university had complied with the conditions of the escrow agreement, pending the performance of which this suit was instituted. The objection made is that said attempted conveyance is in violation of section 5, art. 2, of the Constitution (section 13, Wms. Ann. Const.).

These conditions then existed: (1) The United States had conveyed to the city, by grant in fee simple for value, title to the premises in question, and, later, to remove any doubt as to the title conveyed, had passed the act of March 4, 1915, quitclaiming to said city "whatsoever right, title or interest the United States may have in and to said tract of land, by reason of escheat or otherwise"; (2) the city of Guthrie, as the trustee (if any trust existed), for the inhabitants of said city, had authorized and given its consent to the execution of said conveyance by the ordinance and proceedings calling for said election; (3) the inhabitants of said city, who were the beneficiaries of the trust (if any), had also given their consent to said conveyance, as evidenced by the election held on the 9th day of May, 1913—and thus we see that the grantor, the grantee, and the beneficiaries had all consented and agreed to the conveyance. The plaintiff in this case certainly ought not to be heard, in view of this situation, to complain, unless some special right of his is involved. No special assessment was made upon his property for the purchase or maintenance of the premises, and the only injury complained of is that the value of his property in the neighborhood of the park will deteriorate, and that he will be deprived of the use of said premises as a park. This is not sufficient to authorize him to main-

tain this action. *Brooklyn Park Com'rs v. Armstrong,* *supra; Owen v. Tulsa, supra.*

This, then, brings us to the question whether the attempted sale is in violation of the constitutional provision above referred to, or whether it is effective to pass title when the conditions of the escrow agreement are complied with and the deed delivered. Being vested with the power of sale, as seen, the city, upon good and sufficient consideration, might convey the property to any grantee it chose. Section 926, Rev. Laws 1910, defines "consideration" to be:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Another definition of "consideration" is found in 9 Cyc. 311, as follows:

"It may be laid down, as a general rule in accordance with the definition given above, that there is a sufficient consideration for a promise if there is any benefit to the promisor or any loss or detriment to the promisee. It is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something of value flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is an inducement to the transaction; and in the matter of a benefit, a mere expectation or hope of a contingent benefit is sufficient, as, for example, the expectation of advantage or profit from the thing promised. Indeed, there is a consideration if the promisee, in return for the promise, does anything lawfully which he is not bound to do, or refrains from doing anything which he

has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."

Another good definition of "consideration" is found in 6 R. C. L. 654, sec. 67, as follows:

"A long series of decisions has established the rule that a benefit to the promisor, or a detriment to the promisee, is a sufficient consideration for a contract. Stated with greater elaboration, a valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other. Of course, there can be no question as to the sufficiency of the consideration where there is a benefit to the promisor, as well as a detriment to the promisee. * * * "

The principle stated in the text quoted is generally sustained by the authorities.

Applying these rules, then, to the deed in question, we find that the city conveyed to the defendant university the property in question, in consideration of $1, and other valuable considerations. By reference to the escrow agreement we ascertain that the defendant university assumes the responsibility of maintaining and protecting the property and of keeping same insured pending consummation of the escrow agreement, and that it agreed to raise a permanent endowment in the sum of $250,000, cash or securities, and to establish and maintain a university of high class and grade in the city of Guthrie. This brings the contract within the rule, above stated, as to consideration, for it will not be gainsaid that the maintenance of a high-class institution of learning such as is contemplated by the agreement will be of much value and profit, both present and prospective, to the defendant city, and to the inhabitants thereof; and the obligations and

responsibilities assumed by the defendant university are sufficient consideration to uphold the conveyance.

The city having the right to sell the property, and the consideration being adequate, it would make no difference whether the grantee be a sectarian institution or not, for a sale upon a sufficient consideration would not be within the prohibition of section 5, art. 2 of the Constitution.

The proposition that the defendants in error were estopped by judgment of the district court of Logan county in *State ex rel. Hill v. Barnes et al.*, and in *Manhattan Construction Co. v. Barnes, Mayor*, 22 Okla. 191, 97 Pac. 907, to question the fact that the lands now involved were a public park and the improvements placed thereon were public utilities at the time of the litigation, in those cases, is immaterial, in view of the conclusions which we have reached. The issues in these cases were that the property was in fact being used as a park, and that the expenditures authorized by the issuance of bonds therein involved were for public utilities and city improvements.

Throughout this opinion we have treated the property as in fact a park, being used as such at the time; and therefore the question as to whether the defendants in error are estopped to claim said premises were not used as a park, and that the improvements thereon were for public utilities, is immaterial.

For the reasons given, the former opinion herein, published in 145 Pac. 764, is withdrawn, and the judgment appealed from is affirmed.

KANE, C. J., and BROWN, J., concur. SHARP, J., concurs in conclusion. TURNER, J., dissents.