Dear Representative Murphey:
This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
 1. May a city enter into a contract with the owner of commercial property to provide the property with an exclusive exemption from city building codes and other city regulatory ordinances for a period of five years?
 2. May a city, which under the annexation statutes of the State can not require annexation of a commercial property, enter into a contract with the property owner for the purpose of collecting municipal sales tax on sales made on the property, under which the city agrees to pay compensation to the owner for a period of five years in exchange for the owner's consent to annexation?
 I. POLICE POWERS
You first ask whether a city council, in consideration of an owner of commercial property agreeing to a consensual annexation of specific real property, may enter into a contract with the owner to *Page 2 
provide the property with an exclusive exemption from city building codes and other city regulatory ordinances.[1]
Early in our state's history the Oklahoma Supreme Court explained the nature and scope of our State's "police powers" in a case involving personal injuries along a railway. InChicago, R.I. P. Ry. Co. v. Taylor, 192 P. 349, 351 (Okla. 1920), plaintiffs' buggy was overturned when their horse was frightened by steam and noise from a train's engine. The proximate cause of the two occupants' injuries was an open ditch on the railway company's right of way within a street easement of the City of El Reno. Prior to Oklahoma's statehood, Congress in 1887 granted to the prior railroad company "a right of way one hundred feet in width through said Indian Territory."Id. at 349 (syllabus ¶ 8). "Section 9 of said act requires that `said railroad company shall construct and maintain continually all road and highway crossings and necessary bridges over said railway wherever said roads and highways do now or may hereafter cross said railway's right of way, or may be by the proper authorities laid out across the same.'" Id. After statehood, the Oklahoma Legislature required railroads to build crossings and maintain highways unobstructed over its entire right of way even though the street or highway was laid out across the railroad subsequent to the construction of the railroad.See id. at 350. Defendant railroad argued that it had no duty under the original congressional legislation as to Indian territory to repair the city's ditch and that it was the city's responsibility. Id. The Oklahoma Supreme Court held the railroad was required to meet the new higher standard set by the Legislature rather than the territorial standard in place at the time the rails were laid. In short, the railroad became obligated to properly maintain the drainage ditch in spite of the city's failure to do so. Id. at 351.
As to the nature and scope of our State's "police powers," the Oklahoma Supreme Court explained:
 While no court has undertaken to specifically define the outlying boundary lines of that inherent power of the government to enact, within constitutional limitations, laws to promote the order, safety, health, morals, and general welfare of society, denominated, for want of a better name, the police power of the state, it is firmly settled that such power is an attribute of sovereignty, and exists without reservations in the Constitution. . . .
 The police power of the state can neither be abrogated, bargained away, nor alienated, even by express grant, and all contracts and property rights are acquired subject to its fair exercise, and neither the contract clause nor the due process clause in the federal Constitution overrides the power of the state to establish necessary and reasonable regulations under its police powers. *Page 3 
 As the police powers cannot be surrendered, a contract purporting to do so is void ab initio. . . .
Id. at 349-50 (syllabus ¶ 6, 11, 12) (emphasis added).
In a similar railroad case the Tenth Circuit Court of Appeals stated:
 It is said that the construction of the railroad tracks over 5th street in accordance with the enabling statute and ordinance, constituted a valid contract between the City of Tulsa and the Railroad Company which could not be abrogated or impaired by the subsequent grant of power to the Corporation Commission. See Enid City Ry. Co. v. City of Enid, 43 Okl. 778, 144 P. 617 and Chicago R.I. P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349. True, the construction of the railroad in pursuance of the grant of the right, constituted a contract between the City of Tulsa and the Railroad Company. But, contracts of this nature have been generally understood to be subordinate to the public interest they affect, and they must yield to the police power of the state to regulate in the interest of the public welfare. " * * * The contract will carry with it the infirmity of the subject-matter."
 The City of Tulsa and the Railroad Company could not enter into a contract so rigid and immutable as to render impotent the police power of the State. The contract contemplated the operation of a railroad, clothed with a public interest, hence subject to regulation under the police power of constituted authority, whether that authority existed at the time of the contract or thereafter.
City of Tulsa v. Midland Valley R. Co.,168 F.2d 252, 254-55 (10th Cir. 1948) (citations omitted) (emphasis added).
The contract anticipated by your question would provide the property with an exclusive exemption from building codes and other city regulatory ordinances, and would have the same infirmities as the contracts discussed above in Taylor and Midland Valley.
Therefore, even though an owner of commercial property could agree to a consensual annexation of specific real property, an Oklahoma city council can not enter into a contract with the owner to provide the property with an exclusive exemption from city building codes and other city ordinances arising out of the city's use of its police powers (e.g. building codes, zoning, health and safety). Such a contract is contrary to the fundamental law of police powers and is void abinitio.
 II. ANNEXATION STATUTES
You next ask whether a city, which under the annexation statutes of the State can not require annexation of a commercial property, may enter into a contract with the property owner for the *Page 4 
purpose of collecting municipal sales tax on sales made on the property, under which the city agrees to pay compensation to the owner for a period of five years in exchange for the owner's consent to annexation. Oklahoma Statutes authorize a city council to take action to increase or decrease the geographical size of its corporate territory:
 The municipal governing body by ordinance may add to the municipality territory adjacent or contiguous to its corporate limits and increase or diminish the corporate limits as the governing body deems desirable for the benefit of the municipality.
11 O.S. 2001, § 21-101[11-21-101] (emphasis added).
A city council could require annexation of commercial property without the owner's consent where:
 1. The territory to be annexed is subdivided into tracts or parcels of less than five (5) acres and contains more than one residence; or
 2. Three sides of the territory to be annexed are adjacent or contiguous to the property already within the municipal limits if:
 a. the adjacent property on each side constitutes an area in width greater than three hundred (300) feet at its narrowest point excluding a roadway or right-of-way that is adjacent or contiguous to the territory,
 b. the municipal governing body makes findings that the annexation furthers municipal purposes relating to airports, spaceports and military installations and such findings are included in the public hearing provided for in subsection D of this section. . . .
11 O.S.Supp. 2010, § 21-103[11-21-103](A).[2]
A city council and a property owner could negotiate an annexation agreement using another part of the statute: *Page 5 
 Before the governing body of a city may annex any territory adjacent or contiguous to the city, it must obtain the written consent of the owners of at least a majority of the acres to be annexed to the municipality and provide for notice and a public hearing on the proposed annexation of the territory in the manner provided in subsection B of this section[.]
11 O.S.Supp. 2010, § 21-103[11-21-103](A) (emphasis added).
In your question, the owner of a single tract of commercial property adjacent or contiguous to the municipality is also the owner of "at least a majority of the acres to be annexed." See id. Thus, under Section 21-103(A), the property owner could agree in writing to consent to the city's annexation.[3]
However, a city is limited by OKLA. CONST. art. X, § 17[4] from receiving less than adequate consideration from a property owner for a consensual annexation when the city could proceed to force annexation using its own statutory power for less costs. "Consideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party." Burkhardt v. City ofEnid, 771 P.2d 608, 611 (Okla. 1989) (citing Sharp v. City ofGuthrie, 152 P. 403, 408 (Okla. 1915)).[5] *Page 6 
The determination as to what is adequate consideration is a question of fact, which cannot be answered in an Attorney General's Opinion. 74 O.S.Supp. 2010, 18b(A)(5).
As stated above, OKLA. CONST. art. X, § 17 requires a city to obtain adequate consideration before it may enter any annexation agreement. Obtaining the voluntary consent of an owner could be considered as one factor when weighing all relevant factors as to whether adequate consideration has been received by the city. Again, the determination as to what is adequate consideration is a question of fact, which cannot be answered in an Attorney General's Opinion. 74 O.S.Supp. 2010, 18b(A)(5).
 III. PUBLIC PURPOSE REQUIREMENT
As part of your second question we must explore whether a city council can pay money from its general revenue fund as compensation to the owner of commercial property located adjacent to the city as part of a contract for the owner's consent to annexation. Upon such consensual annexation, the city would be entitled to collect its general sales tax on the products sold by the newly annexed business. In exchange for the consent to be annexed, the retail business would receive, in part, payments from the city equal to an agreed pro-rata share of the sales tax revenues generated by its sales for a period of five (5) years.
Title 68 O.S.Supp. 2010, § 2701[68-2701] in pertinent part provides:
 A. Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government. . . . Provided:
 1. Taxes shall be uniform upon the same class subjects, and any tax, charge, or fee levied upon or measured by income or receipts from the sale of products or services shall be uniform upon all classes of taxpayers; [and] *Page 7 
 . . . .
 7. Any revenues derived from a tax authorized by this subsection not dedicated to a limited purpose shall be deposited in the municipal general fund.[6]
Id. (emphasis added) (footnote added).
Taxes on the sale of products are levied against and paid by the consumer making the purchase.See 68 O.S.Supp. 2010, § 1352[68-1352](6) (defining consumer). The retail business, or vendor, is not the taxpayer under this system, rather it is charged with the responsibility of collecting the tax and forwarding it to the Oklahoma Tax Commission for division among the taxing authorities, including a city. Seeid. § 1352 (28) (defining vendor). We must determine whether a city can use its general revenue fund to pay compensation equal to an agreed pro-rata share of the sales tax collections to a retailer that voluntarily consents to annexation by the city. The primary question is whether this is a valid public purpose for the use of a city's general revenue.
As to cities in Oklahoma, two sections of our State Constitution are relevant. The first is OKLA. CONST. art. X, § 14(A) that provides, "taxes shall be levied and collected by general laws, and for publicpurposes only." Id. The second is OKLA. CONST. art. X, § 17 that states:
 The Legislature shall not authorize any . . . city . . . to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Id. (emphasis added).
The Oklahoma Supreme Court explains these provisions from a public purpose perspective:
 Both sections 14 and 17 of article X of the Oklahoma Constitution embrace a "public purpose" requirement. Section 14 restricts the use of public funds to expenditures for a public purpose. That provision's correlative limitation, section 17, was "adopted for the purpose of preventing the investment of public funds in private enterprises."
State ex rel. Brown v. City of Warr Acres,946 P.2d 1140, 1143-44 (Okla. 1997) (footnotes omitted).
Further, the court addresses the responsibilities of a city's governing body: *Page 8 
 The City Council is the legislative body of a city. As such, it is its function to determine what expenditures are designed to promote the public good and welfare of the city and its inhabitants. It has no limitations as to expenditures, "save and except those which are expressly placed on its exercise by the Constitution of the State." Dixon v. Shaw, 122 Okla. 211, 253 P. 500, 501 (Okla. 1927).
Id. at 1144.
As a matter of judicial policy:
 The term "public purpose" should not be construed "in a narrow or restrictive sense." Burkhardt[,] 771 P.2d at 610 (quoting Helm v. Childers, 181 Okla. 535, 75 P.2d 398, 399 (Okla. 1938)). Courts are to give great deference to a legislative body's determination that a particular project will serve a public purpose. In reviewing that determination, "courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy." Childers, 75 P.2d at 399. Such a determination should be reversed only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable. R. E. Short Co. v. City of Minneapolis, 269 N.W.2d 331, 337 (Minn. 1978).
 The structure of economic development arrangements must change and grow over time to reflect and respond to increased commercial competition and complexities. An economic development plan, in whatever form it takes, will be upheld so long as it serves a public purpose and otherwise meets constitutional requirements.
Id. at 1144-45 (emphasis added).
In Brown, the City of Warr Acres desired to attract a new Wal-Mart store to be built within its city limits with projected city sales tax revenues of $400,000.00 per year. Warr Acres agreed to purchase and escrow a long term bond, which with accrued interest would be used as an inducement to the land owner, to enter a long term ground lease with the retailer. Upon taxpayer challenge, the Oklahoma Supreme Court upheld the validity of the city's plan:
 [The] City Council determined that the proposed economic development plan would promote a legitimate public purpose by increasing sales tax revenues for the City of Warr Acres, adding new jobs, retaining existing jobs, and promoting collateral economic growth and development. The essential question presented to this Court, as well as to the trial court, is not whether the details of the plan match those in Burkhardt, but rather whether the plan served a legitimate public purpose. It is not for the courts to second guess the wisdom of the City Council in agreeing to the details of the plan. This Court need not agree that it was the best arrangement or even a good arrangement. If the economic development plan served a legitimate *Page 9 public purpose of promoting the general welfare, economic security, and prosperity of the City of Warr Acres and its citizens, then it withstands constitutional challenge.
Id. at 1145 (emphasis added).
The proposed arrangement in your question would require a city to pay compensation equal to an agreed pro-rata share of the sales tax revenues generated by a newly annexed retail business over a five-year period to that business, because the new business agreed to the municipality's annexation. As shown above, Oklahoma courts are to give great deference to a city council's determination that a particular arrangement will serve a public purpose. In reviewing that determination, "courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy" unless the action is "manifestly arbitrary, capricious, or unreasonable." Brown, at 1144. Therefore, it is the responsibility of the city council, as the legislative body, to determine if the specific arrangement or plan will serve a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the municipality. In Brown, the city council made findings in its ordinance that "increasing sales tax revenues . . ., adding new jobs, retaining existing jobs, and promoting collateral economic growth and development" would promote "a legitimate public purpose," and the court upheld its determination. Id. at 1145. We conclude that another city council could evaluate these factors, and others not specifically identified, to make its own public purpose determination. Although there is deference to a city's determinations, such public purpose determinations by a city council are subject to judicial review underBrown. In the same light as Brown, we need not agree by this Opinion that this contract would be "the best arrangement nor even a good arrangement" for any particular city.
Therefore, a city may contract with the owner of commercial property to pay the owner compensation equal to a pro-rata share of additional sales tax revenue collected by the city as a result a consensual annexation of the owner's property, as long as the city council determines the specific arrangement or plan will serve a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the municipality, and such determination is not manifestly arbitrary, capricious, or unreasonable.
 It is, therefore, the official Opinion of the Attorney General that:
 1. A city council can not enter into a contract with an owner of commercial property to provide the property with an exclusive exemption from city building codes and other city ordinances arising out of the city's use of its police powers (e.g. building codes, zoning, health and safety), because such a contract is contrary to the fundamental law of police powers and is void ab initio. Chicago, R.I. P. Ry. Co. v. Taylor, 192 P. 349, 349-50 (Okla. 1920). *Page 10 
 2. Title 11 O.S.Supp. 2010, § 21-103[11-21-103](A) empowers a city to annex territory adjacent or contiguous to it without consent of the owners of at least a majority of the acres to be annexed on conditions stated therein. A city is limited by Okla. Const. art. X, § 17 which prohibits a city from receiving less than adequate consideration from a property owner for a consensual annexation when the city could proceed to force annexation using its own statutory power for less costs.
 3. As long as a city council votes to determine a specific arrangement or plan will serve a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the city, and such determination is not manifestly arbitrary, capricious, or unreasonable, a city may contract with the owner of commercial property to pay the owner compensation equal to a pro-rata share of additional sales tax revenue collected as a result a consensual annexation of the owner's property. See State ex Rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144-45 (Okla. 1997).
E. SCOTT PRUITT, Attorney General of Oklahoma
JOHN CRITTENDEN Assistant Attorney General
[1] This discussion should not be confused with a request under zoning laws by a property owner to a city's board of adjustment for a variance of a nonconforming use within a particular zoned district.
[2] This statute was amended by 2011 Okla. Sess. Laws ch. 60, § 1, effective November 1, 2011. There is a discrepancy in the amendment between Sections A and D, raising a question as to whether after November 1, 2011, a city or a town is authorized to annex territory without the consent of the owners. This amendment is not relevant to our discussion of whether a city may enter into a contract to annex a property owner for the purposes of collecting sales tax except to the extent that it may determine whether there is adequate consideration for the contract. If a property owner may be annexed without consent, the owner's voluntary annexation may not constitute adequate consideration for the contract. Whether adequate consideration exists is a question of fact which cannot be determined in an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
[3] Oklahoma Statutes also authorize voters and owners of non-annexed land to petition a municipal council for annexation of their property:
 At least three-fourths of the registered voters and the owners of at least three-fourths (in value) of the property in any territory adjacent or contiguous to the municipality may request annexation by signing and filing a petition with the governing body of the municipality. The petitioners must give notice of the presentation of the petition by publication at least once each week for two (2) successive weeks in a newspaper of general circulation in the municipality where the petition has been presented. The municipality may pay the cost of the annexation proceedings. After the notice of the petition has been given, the governing body by ordinance may annex the territory to the municipality.
11 O.S. 2001, § 21-105[11-21-105].
[4] Article X, Section 17 of the Oklahoma Constitution states:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Id.
[5] Sharp also relies on a 1910 definition of "good consideration" as currently found in 15 O.S. 2001, § 106[15-106]. "Good consideration" is explained:
 Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.
Id.
[6] This Opinion relates only to a sales tax levied for general purposes and deposited under this subsection in the general fund. Subsection 2701 (B) requires the proceeds of a sales tax levied for a limited purpose specified in the ordinance and approved by the voters to specify the projects or expenditures for which the tax is be used and must be deposited into a special limited purpose fund.