Dear Gray
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Is the Oklahoma Waste Tire Recycling Act, 27A O.S. Supp.1999, §§ 2-11-401-2-11-413, which provides for distributionof public funds to private persons or entities that process,collect, transport, deliver, or utilize waste tires,constitutional in light of Article X, Section 15(A) of theOklahoma Constitution, which prohibits gifts from the State ofOklahoma to private entities?
 2. Did House Bill No. 1574, Okla. Sess. Laws. Ch. 254 (1999),which removed the requirement that monies in the Waste TireRecycling Indemnity Fund be segregated from other monies, renderthe Oklahoma Waste Tire Recycling Act, 27A O.S. Supp. 1999, §§2-11-401-2-11-413, unconstitutional under Article X,Section 15(A) of the Oklahoma Constitution, which prohibits giftsfrom the State of Oklahoma to private entities?
 3. In the event House Bill No. 1574, Okla. Sess. Laws. Ch. 254(1999), renders the Oklahoma Waste Tire Recycling Act, 27A O.S.Supp. 1999, §§ 2-11-401-2-11-413, unconstitutional underArticle X, Section 15(A) of the Oklahoma Constitution, what isthe impact of such upon the collection of the assessments and thedistribution of the monies in the Waste Tire Recycling IndemnityFund?
 I. The Oklahoma Waste Tire Recycling Act
A. Background
¶ 1 The Oklahoma Waste Tire Recycling Act, now codified at 27AO.S. Supp. 1999, §§ 2-11-401-2-11-413, was originally enacted by the Oklahoma Legislature in 1989. The principal purpose of the Oklahoma Waste Tire Recycling Act is protection of the environment by facilitating the reduction of waste tires through proper recycling. See A.G. Opin. 95-58 at 154. Although amended on numerous occasions, the fundamental scheme of the Oklahoma Waste Tire Recycling Act has remained essentially the same since its enactment. Purchasers of tires are assessed a fee upon the sale of tires for use on motor vehicles. See 27A O.S.Supp. 1999, § 2-11-403[27A-2-11-403]. A fee is also assessed when a motor vehicle is first registered in the State of Oklahoma. See id.
The fees assessed are remitted by the tire dealer, or the motor license agent as the case may be, to the Oklahoma Tax Commission,see id., whereupon the fees are placed into the Waste Tire Recycling Indemnity Fund. See 27A O.S. § 2-11-404[27A-2-11-404]. Private persons or entities may make claims for compensation from the Waste Tire Recycling Indemnity Fund for processing waste tires,see 27A O.S. Supp. 1999, § 2-11-408[27A-2-11-408](A)(1), for collection, transportation, and delivery of waste tires, see 27A O.S.Supp. 1999, § 2-11-408[27A-2-11-408](A)(2), and for collecting, processing, and utilizing waste tires for erosion control, bank stabilization, or other conservation projects. See 27A O.S.Supp. 1999, § 2-11-408[27A-2-11-408](A)(3).
B. The Waste Tire Recycling Indemnity Fund
¶ 2 As originally enacted, the Oklahoma Waste Tire Recycling Act created the Waste Tire Recycling Indemnity Fund, which was to be administered by the Oklahoma Tax Commission. See 68 O.S.1991, § 53004[68-53004](A). The Waste Tire Recycling Indemnity Fund consisted of: (1) monies received by the Oklahoma Tax Commission as proceeds from a fee imposed upon the sale of new tires for automobiles and light trucks, see 68 O.S. 1991, §§ 53003[68-53003](A), 53004(B)(1); (2) interest attributable to investment of money in the Waste Tire Recycling Indemnity Fund, 68 O.S. 1991, §53004[68-53004](B)(2); and (3) money received by the Oklahoma Tax Commission in the form of gifts, grants, reimbursements, or from any other source intended to be used for the purposes specified by or collected pursuant to the provisions of the Oklahoma Waste Tire Recycling Act. See 68 O.S. 1991, § 53004[68-53004](B)(3).
¶ 3 Of the monies accruing annually to the Waste Tire Recycling Indemnity Fund, the Oklahoma Legislature made eight percent (8%) available to the Oklahoma Tax Commission and the State Department of Health for administering the requirements of the Oklahoma Waste Tire Recycling Act. See 68 O.S. 1991, § 53005[68-53005](A). Remaining monies in the Waste Tire Recycling Indemnity Fund were to be allocated to waste tire facilities that, among other conditions, could demonstrate successful processing of discarded vehicle tires to make such tires available for recycling, reuse, or energy recovery. See 68 O.S. 1991, § 53005[68-53005](B). The 1993 amendments renumbered and amended the Oklahoma Waste Tire Recycling Act to reflect the creation of the Oklahoma Department of Environmental Quality and transfer of duties from the State Department of Health. See 27A O.S. Supp. 1999, §§2-11-401-2-11-410.
¶ 4 The 1998 amendments made certain minor changes to the Oklahoma Waste Tire Recycling Act. For example, of the ninety-two percent (92%) of the Waste Tire Recycling Indemnity Fund remaining after administration allotments to the Oklahoma Tax Commission and the Oklahoma Department of Environmental Quality,27A O.S. Supp. 1999, § 2-11-405[27A-2-11-405](B), the Legislature determined that ten percent (10%) be allocated to businesses located in Oklahoma who manufacture new products or derive energy benefits from waste tires processed according to the requirements of the Oklahoma Waste Tire Recycling Act. Id. The balance of monies in the Waste Tire Recycling Indemnity Fund is to be allocated to waste tire facilities or persons, corporations, or other legal entities demonstrating, among other things, successful processing of discarded vehicle tires pursuant to the Oklahoma Waste Tire Recycling Act. See 27A O.S. Supp. 1999, § 2-11-405[27A-2-11-405](C).
 II. The Oklahoma Waste Tire Recycling Act is Constitutional Under Article X, Sections 14 and 15(A) of the Oklahoma Constitution
¶ 5 Legislation is strongly presumed to be constitutional.Taylor v. State Educ. Employees Group Ins. Program,897 P.2d 275, 277 (Okla. 1995). Whenever possible, statutes should be construed so as to uphold their constitutionality. Kimery v.Public Serv. Co. of Oklahoma, 622 P.2d 1066, 1069 (Okla. 1980). A reviewing court must uphold a statute "unless it is clearly, palpably and plainly inconsistent with fundamental law."Id. at 1069. It is against this background that the constitutionality of the Oklahoma Waste Tire Recycling Act must be analyzed.
A. Expenditures under the Oklahoma Waste Tire Recycling Act Meet the "Public Purpose" Requirement of Article X, Section 14 of the Oklahoma Constitution
¶ 6 The first step in our analysis is Article X, Section 14 of the Oklahoma Constitution. Like Article X, Section 15(A), the constitutional provision about which you inquire, Article X, Section 14 is a constitutional restriction on the expenditure of public funds. Sections 14 and 15(A) are generally construed in tandem.
¶ 7 In pertinent part, Article X, Section 14, provides, "taxes shall be levied and collected by general laws, and for public purposes only[.]" Article X, Section 14 thereby restricts the use of public funds to expenditures that are for a "public purpose."See Burkhardt v. City of Enid, 771 P.2d 608, 610 (Okla. 1989). A "public purpose" affects the inhabitants of the State as a community, not as individuals. See Board of Comm'rs ofMarshall County v. Shaw, 182 P.2d 507, 515 (Okla. 1947). However, a "public purpose" need not be for the use and benefit of the entire public, but rather may be only for a smaller segment. See Way v. Grand Lake Ass'n, Inc., 635 P.2d 1010,1016 (Okla. 1981) (citing Shaw, 182 P.2d at 515). Importantly, the term "public purpose" is not construed in a narrow or restrictive sense. See Helm v. Childers,75 P.2d 398, 399 (Okla. 1938). Courts give great deference to a legislative body's determination that a particular project serves a public purpose, and will reverse such determination "only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable." State ex rel. Brown v. City of Warr Acres,946 P.2d 1140, 1144 (Okla. 1997). Thus, it must be determined whether expenditures under the Oklahoma Waste Tire Recycling Act serve a "public purpose."
¶ 8 As the Supreme Court found in Burkhardt, 771 P.2d at 611 (Okla. 1989), where a legislative enactment yields benefits to the public, such benefits will bring the legislative enactment within the definition of "public purpose." Burkhardt involved a constitutional challenge to an economic development plan created by the City of Enid which included Enid's purchase and lease-back of Phillips University's campus. See id. at 610. Among other things, the economic development plan was an attempt to thwart the predicted failure of that private learning institution. Seeid. Upholding the constitutionality of the economic development plan under Section 14, Article X of the Oklahoma Constitution, the Court noted that citizens of Enid would receive many direct and indirect benefits from the economic development plan, such as a boost to Enid's economy through preservation of jobs and the continued presence of students in Enid, the ability to attract new industry, and the social, educational, and cultural benefits that flow from access to higher educational opportunities. Seeid. at 611. The Court held that these "overwhelming benefits to the community of Enid bring the plan within the definition of public purpose." Id.
¶ 9 Like the benefits of the economic development plan to the City of Enid and its citizens in Burkhardt, the benefits of the Oklahoma Waste Tire Recycling Act to the State and its citizens bring it within the definition of "public purpose" in Article X, Section 14 of the Oklahoma Constitution. As indicated in the title of the Oklahoma Waste Tire Recycling Act, it is "[a]n Act relating to the environment and natural resources." The Oklahoma Waste Tire Recycling Act is part of Article XI of Title 27A, which deals with waste reduction and recycling, and a review of its provisions reveals that its principal purpose is protecting the environment by facilitating the reduction of waste tires through proper recycling. See A.G. Opin. 95-58. Thus, the public benefit of the Oklahoma Waste Tire Recycling Act is protection of the environment through waste reduction and recycling. Waste reduction and recycling will benefit the public by preserving Oklahoma's natural resources, by conserving landfill space, and consequently reducing the need for the creation of additional landfills. Waste reduction and recycling will also facilitate the cleanup of existing waste tire dumps. Additionally, the public will be benefitted economically by the creation and operation of a system of incentives designed to encourage alternative uses for waste tires by manufacturing new products or deriving energy benefits from waste tires. See 27AO.S. Supp. 1999, § 2-11-405[27A-2-11-405](B).
¶ 10 The benefit to the public of protecting the environment through waste reduction and recycling brings expenditures under the Oklahoma Waste Tire Recycling Act within the definition of "public purpose." Consequently, the Oklahoma Waste Tire Recycling Act, and expenditures thereunder, are consistent with Article X, Section 14 of the Oklahoma Constitution.
B. Expenditures of Public Funds under the Oklahoma Waste Tire Recycling Act are not Gifts Prohibited by Article X, Section 15(A) of the Oklahoma Constitution
¶ 11 The specific constitutional restriction on the expenditure of public funds about which you inquire is Article X, Section 15(A) of the Oklahoma Constitution, which provides:
¶ 12 Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription tostock, by tax, or otherwise, to any company, association, orcorporation.
¶ 13 (Emphasis added). The restrictions in Article X, Section 15(A) of the Oklahoma Constitution were intended to limit the use of funds from the State Treasury. See Veterans of Foreign Warsv. Childers, 171 P.2d 618 (Okla. 1946).
¶ 14 Public benefits from, and obligations imposed upon those receiving public funds by, a legislative enactment rebut arguments that the legislative enactment is contrary to ArticleX, Section 15(A) of the Oklahoma Constitution. See Burkhardt v.City of Enid, 771 P.2d 608, 611-12 (Okla. 1989). Thus, theBurkhardt matter discussed above is an integral part of our analysis of the constitutionality of the Oklahoma Waste Tire Recycling Act, and expenditures thereunder, in relation to Article X, Section 15(A). There, the Oklahoma Supreme Court also analyzed the constitutionality of the City of Enid's economic development plan under Article X, Section 17 of the Oklahoma Constitution, see Burkhardt, 771 P.2d at 611, which is the counterpart provision to Article X, Section 15(A) relating to counties, cities, towns, and incorporated districts. See In reUniv. Hospitals Auth., 953 P.2d 314, 320 (Okla. 1997). Indeed, the Oklahoma Supreme Court has specifically recognized that theBurkhardt analysis applies in the constitutional analysis of legislation under Section 15(A) of Article X. See id. at 320.
¶ 15 In Burkhardt, the Oklahoma Supreme Court ruled that the public benefits to the citizens of Enid constituted consideration to the City of Enid, and "refute any argument that the plan is a gift or extension of credit to a private institution[.]"Burkhardt, 771 P.2d at 611. Additionally, the obligations imposed upon Phillips University, such as lease payments to the City of Enid, sale of the campus at less than market value, limitations on the use of campus sale proceeds, etc., "provide adequate consideration to demonstrate the plan is not a gift or loan to Phillips, but rather a legitimate plan to further economic development by attracting industry to a city that provides higher education opportunities." Id.
¶ 16 As previously discussed, the Oklahoma Waste Tire Recycling Act provides the State of Oklahoma and its citizens with numerous public benefits relating to the environment and natural resources. Moreover, those seeking compensation under the Oklahoma Waste Tire Recycling Act must first have provided the required services to the State of Oklahoma, namely processing waste tires, collection, transportation, and delivery of waste tires, and collection, processing, and utilization of waste tires for erosion control, bank stabilization, or other conservation projects. See 27A O.S. Supp. 1999, § 2-11-408[27A-2-11-408] (A)(1)-(3). Additionally, in applying for compensation, entities must make numerous demonstrations, all required as a condition precedent to eligibility for compensation. See, e.g., 27A O.S. Supp. 1999,§§ 2-11-406[27A-2-11-406](A)(2)(a), (B)(3), (C); 2-11-407; 2-11-407.1; 2-11-408.
¶ 17 In sum, the benefits flowing to the public and the obligations assumed by those seeking compensation from the Waste Tire Recycling Indemnity Fund, are consideration to the State of Oklahoma and its citizens. See Burkhardt, 771 P.2d at 611. Consequently, expenditures under the Oklahoma Waste Tire Recycling Act are not impermissible gifts to private entities and are consistent with Article X, Section 15(A).
 III. The Removal of 27A O.S. Supp. 1999, § 2-11-404(C), Which Segregated the Waste Tire Recycling Indemnity Fund from other Public Funds, Did Not Render the Oklahoma Waste Tire Recycling Act Unconstitutional Under Article X, Section 15(A) of the Oklahoma Constitution
¶ 18 Prior to 1999, the Oklahoma Waste Tire Recycling Act mandated segregation of monies deposited in the Waste Tire Recycling Indemnity Fund from other public funds:
¶ 19 The monies deposited in the Indemnity Fund shall at no time become part of the general budget of the [Oklahoma Tax] Commission or any other state agency. Except as provided for in Section 195 of this act, no monies from the Indemnity Fund shall be transferred for any purpose to any other state agency or any account of the [Oklahoma Tax] Commission or be used for the purpose of contracting with any other state agency or reimbursing any other state agency for any expense.
¶ 20 27A O.S. Supp. 1998, § 2-11-404[27A-2-11-404](C). This segregation of monies in the Waste Tire Recycling Indemnity Fund continued through the various amendments to the Oklahoma Waste Tire Recycling Act. However, in 1999, with the enactment of House Bill No. 1574, this provision was deleted. See Okla. Sess. Laws. Ch. 254, § 5 (1999). House Bill No. 1574 also transferred $4.3 million in accumulated surplus funds from the Waste Tire Recycling Indemnity Fund to the Special Cash Fund of the State Treasury. See Okla. Sess. Laws. Ch. 254, § 1 (1999).
¶ 21 The fees assessed pursuant to the Oklahoma Waste Tire Recycling Act and placed into the Waste Tire Recycling Act are collected by the State in its sovereign capacity, are required to be kept and preserved in the State Treasury, and are therefore public funds. See 62 O.S. Supp. 1999, § 7.1[62-7.1](B)(2). The former requirement that these funds be segregated did not render these monies non-public. See id. Moreover, Article X, Section 15(A) contains no requirement mandating segregation of monies. Thus, the removal of 27A O.S. Supp. 1999, § 2-11-404[27A-2-11-404](C) by House Bill 1574 has no impact upon the public nature of the fees assessed pursuant to the Oklahoma Waste Tire Recycling Act or upon the constitutionality of the Oklahoma Waste Tire Recycling Act under Article X, Sections 14 and 15(A) of the Oklahoma Constitution.
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Expenditures under the Oklahoma Waste Tire Recycling Act,27A O.S. Supp. 1999, §§ 2-11-401-2-11-413, which providesfor distribution of public funds to private persons or entitiesthat process, collect, transport, deliver, or utilize wastetires, are for a public purpose as required by Article X, Section14 of the Oklahoma Constitution, and are not gifts to privateentities in violation of Article X, Section 15(A) of the OklahomaConstitution.
 2. House Bill No. 1574, Okla. Sess. Laws. Ch. 254 (1999),which removed the requirement that monies in the Waste TireRecycling Indemnity Fund be segregated from other monies, doesnot render the Oklahoma Waste Tire Recycling Act, 27A O.S.Supp. 1999, §§ 2-11-401-2-11-413, unconstitutional underArticle X, Section 15(A) of the Oklahoma Constitution.
 3. In light of our answers to Questions 1 and 2, the thirdquestion in your inquiry need not be addressed.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
STEPHEN L. JANTZEN ASSISTANT ATTORNEY GENERAL