ROBINSON et al. v. HAL JOHNSON & CO. et al.

No. 35177.    April 29, 1952.

*243 P. 2d 657.*

Allen G. Nichols, Wewoka, for plaintiffs in error.

Mosteller, McElroy & Fellers and G. M. Fuller, Oklahoma City, Reily, Reily & Spurr, Shawnee, and Randall Pitman, City Atty., Shawnee, for defendants in error.

GIBSON, J.    At the beginning of World War II the city of Shawnee owned and operated a municipal airport, designated by the parties as Airport No. 1. Early in the war, by appropriate action, including condemnation of a part of the land upon which the airport was located, the United States took over the operation of Airport No. 1 and spent large sums of money in its expansion and improvement. In 1943 the city decided to build another municipal airport, designated Airport No. 2. A hangar and runway were constructed. Both airports were operated as such until 1946, when, the war having ended, the United States Government, by proper procedure, turned back Airport No. 1 to the city of Shawnee, with increased facilities and rebuilt runways. Having no use for two airports the city transferred its facilities to Airport No. 1, and maintained no personnel at Airport No. 2. The trial court found that the city abandoned Airport No. 2 as an airport since 1946, and in this evidence sustains the court's finding.

The evidence reveals that the runways were allowed to deteriorate, the building depreciated, vandals destroyed windows and removed plumbing, electrical and plumbing fixtures and other parts of the structure.

In March, 1949, the city commission by resolution declared that the property was abandoned as an airport or

for other public utility purposes, and this action was confirmed by another resolution on April 9, 1951, when the city accepted an offer of Hal Johnson & Company, a copartnership, to lease the property for a term of 49 years at a rental of one dollar per year, with an option to renew the lease for an additional term of 49 years. Thereafter plaintiffs filed this action, seeking a temporary restraining order and praying that upon a hearing the defendants be permanently enjoined from carrying out the terms of the lease, and other relief. One plaintiff in error, A. P. Robinson, has filed herein his dismissal of the appeal. However, the other plaintiff in error, R. A. Buckley, has not dismissed.

Plaintiffs contend the airport was a public utility and that under Tit. 11 O. S. 1951 §§441 and 442 the city authorities had no power or authority to lease the property because such disposal required the vote of 60 percent of the qualified voters of the municipality to authorize the lease and no such election was held.

Defendants contend that an airport is not a public utility such as contemplated in the foregoing statutes; that the municipality has power under the laws of Oklahoma to dispose of its property; that Shawnee is a city of the first class operating under authority of its charter which becomes the organic law of the city and supersedes other laws relating to purely municipal matters and that under its charter the city has full powers to sell or lease any of its property. It is further said that the disposition of airport property by a municipality is controlled by the Municipal Airports Act, 3 O. S. 1951 §§65.1-65.22, enacted in 1947, and particularly by §65.4 of the act.

We are in accord with contentions of the defendants. Generally all cities have the power to sell and convey real or personal property owned by the city. 11 O. S. 1951 §568. It would appear that 11 O. S. 1951 §§441 and 442 are limitations upon the foregoing general powers, but §446 of the same chapter dealing with public utilities provides:

"It is further provided, that the governing body of any city of the first class, organized and incorporated by special charter adopted at an election held for such purpose, when authorized by such charter, may sell, convey or lease any public utility owned by such municipality operating under special charter without the calling of an election as provided herein."

At the time the lease in question was executed the property was no longer in use as an airport. Its use as an airport had long since been abandoned. It was merely surplus property in the hands of the city.

In such a situation if there is any conflict between the above statute cited by plaintiffs and the provisions of the city charter the provisions of the charter shall prevail as to purely municipal matters. 11 O. S. 1951 §564; Owen v. City of Tulsa, 27 Okla. 264, 111 P. 320, citing City of St. Louis v. Western Union Telegraph Co., 149 U. S. 465, 37 L. Ed. 810.

The city charter specifically provides that the city of Shawnee shall have the power "To make contracts, to take and acquire property, by purchase or otherwise, and to hold, sell, lease, convey or otherwise dispose of, any real or personal property within or without the limits of said city . . ." There is no provision in the charter requiring that a lease of city property shall be submitted to a vote of the people.

In Sharp v. City of Guthrie, 49 Okla. 213, 152 P. 403, this court held that the charter of the city of Guthrie vests in the city the power to sell a city park where the city held a fee-simple title without limitation.

In cases where the municipality owns the fee-simple title to land which was devoted to a public use but that use was abandoned, it has been held that the city had the authority to lease such property when the power to lease was granted in the charter. See Woodward

v. Fox West Coast Theaters, 36 Ariz. 251, 284 P. 350, where a building had been used as a city hall but such use was abandoned on the building of a new city hall. Also, Corning v. Patton, 236 Ala. 354, 182 So. 39, where a long term lease was upheld although given on a building formerly occupied as a courthouse and the county commission acted under its authority to control county property, authorized by statute.

In 1947 the Legislature adopted a comprehensive Municipal Airports Act, 3 O. S. 1951 §§65.1-65.22. It ratified and validated prior acquisitions, actions and bond issues dealing with municipal airports, §65.11. Specific authority for the sale, lease or disposal of airport property was granted in §65.4. Except as limited by the terms and conditions of any grant, loan or agreement with the State or Federal Government the municipality was authorized to dispose of an airport by sale or lease in accord with the provisions of the laws of the state or the provisions of its charter, governing the disposition of other property of the municipality. This entire Act is silent as to any requirement of first submitting the disposal of airport property to a vote of the people, and we hold that no such submission is necessary.

In plaintiffs' petition it is charged that defendants, by their acts in leasing this property, committed a fraud on the plaintiffs and other taxpayers of the city. There was no evidence of fraud offered at the trial. From all of the evidence it is apparent that in the transaction the municipality was endeavoring to bring new industry to the city of Shawnee. The lessee "Jonco" was to engage in the manufacture, sale and operation of aircraft, frames and aircraft component parts. It was estimated that lessee would be compelled to expend between $150,000 and $200,000 in repair of the premises. The lease provided that lessee would commence operations with a minimum of 20 employees and that it would employ a minimum of 50 persons on the local payroll at the expiration of twelve months. If production or operation of the plant ceased for six months the lease was to terminate. We shall not substitute our judgment for that of the city officials as to the wisdom of the transaction. Suffice it to say that the good faith of the city officials cannot be questioned under this record.

Affirmed.

HALLEY, V.C.J., and DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.