Ted BURKHARDT, Cathy Burkhardt, and Richard Poindexter, Appellants,

v.

The CITY OF ENID, Appellee,

and

Phillips University, Inc., Intervenor–Appellee.

No. 70197.

Supreme Court of Oklahoma.

March 21, 1989.

James A. Williamson, Tulsa, for appellants.

Bryce S. Kennedy, City Atty. and Carol Hambrick, Enid, for appellee.

Jones, Bryant & Nigh by Stephen Jones and Craig Bryant, Enid, for intervenor-appellee.

Diane Pedicord and Sue Ann Nicely, Oklahoma City, for amicus curiae, Oklahoma Municipal League.

Michael R. Vanderburg, City Atty., Broken Arrow, for amicus curiae, City of Broken Arrow.

HODGES, Justice.

This appeal challenges an ordinance establishing a voter-approved sales tax to fund the City of Enid's purchase of the Phillips University campus. Five issues are presented: (1) Is the ordinance an expenditure of public funds for a private purpose in violation of article 10, section 14 of the Oklahoma Constitution? (2) Does the ordinance violate article 10, section 17, of the Oklahoma Constitution which prohibits government lending of credit to a private entity? (3) Does the ordinance aid a sectarian institution in violation of article 2, section 5 of the Oklahoma Constitution? (4) Is the ordinance unconstitutionally vague? (5) Are the provisions of the ordinance severable? Because we answer the first four issues in the negative and uphold the ordinance, the fifth issue need not be addressed.

Phillips University (Phillips) is a private, non-profit corporation historically associated with the Disciples of Christ Christian Church (church). Phillips was founded in Enid in 1906.

The City of Enid (city) has suffered a severe economic decline over the past several years. This decline has been marked by massive foreclosures, bank failures, a

dramatic decline in property values and a significant increase in unemployment. By 1987, it was anticipated that Phillips would fail within a short time.

The potential loss of Enid's only institution of higher learning led the City to develop a plan for economic recovery which included the purchase of Phillips' campus. The city would then lease the property back to Phillips. The plan was financed by a three-quarters of one percent sales tax which was narrowly approved by Enid voters on June 2, 1987.[1]

To implement the plan, the city created the Enid Economic Development Authority (EEDA), a public trust, to purchase Phillips' property for $14.35 million. Of that amount, $1 million established an operating fund and $1.35 million was utilized to satisfy existing mortages on campus buildings. The remaining $12 million is held by the Foundation for Enid Education and Economic Development (FEEED), a non-profit corporation established to receive, control and administer these funds. The FEEED is jointly controlled by Phillips and the EEDA. Income from the $12 million is to be used to provide scholarships for Enid students who attend Phillips, establish a University Center and provide operating capital for four years.

Under the plan, Phillips retains an option to repurchase the campus during the twenty-five year lease period. The repurchase must be at market value unless property values have dropped below the original purchase price of $14.35 million. In that

event, Phillips must pay $14.35 million plus the costs of bonds and other financing.

The appellants, Enid taxpayers, brought an action to invalidate the ordinance based essentially on the same issues raised in this appeal. The city, as defendant, and Phillips, as intervenor, argued the constitutionality of the ordinance. After some court-ordered modifications of the plan, the trial court issued an order on December 15, 1987, upholding the sales tax and the intended use of the proceeds. Appellants perfected this appeal. Amicus briefs were filed by the City of Broken Arrow and the Oklahoma Municipal League urging this Court to uphold the constitutionality of the challenged ordinance.

## I.

■ Article 10, section 14, of the Oklahoma Constitution[2] restricts the use of public funds to expenditures for a public purpose. The challenged sales tax was levied to provide for economic development including the purchase of the Phillips campus. Appellants argue the plan unconstitutionally subsidizes a private institution rather than furthering a public purpose.

The term "public purpose" in article 10, section 14, should not be construed "in a narrow or restrictive sense." *Helm v. Childers*, 181 Okl. 535, 536, 75 P.2d 398, 399 (1938). For taxation purposes, public use "requires that the work shall be essentially public and for the general good of all the inhabitants of the taxing body." *Board of Commissioners v. Shaw*, 199

---

**1.** The ballot submitted to Enid voters asked:

PROPOSITION

Shall Ordinance No. 87–16 approved by the City Commission which levies and assesses a City sales tax of three-quarters of one percent (3/4%) in addition to all other City and State sales taxes levied or assessed, upon the gross proceeds or gross receipts derived from all sales to any person taxable under the sales tax ordinances of the City of Enid, the proceeds of which shall be transferred to the Enid Economic Authority to be used to create new jobs and retain existing jobs in the City of Enid by (1) the purchase of certain land, buildings and equipment currently owned by Phillips University, Inc.; and/or (2) to provide funds for economic development of the City of Enid; including, but not limited to,

establishing funds to market the City to new industrial prospects and to facilitate the building of new and expansion of existing industries be approved by the voters?

**2.** Okla. Const. art. 10, § 14:

Taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect Section thirty-one of the Bill of Rights. Except as required by the Enabling Act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection.

Okl. 66, 74, 182 P.2d 507, 515 (1947). A public purpose "affect[s] the inhabitants of the state or taxing district as a community, and not merely as individuals." *Id.*

▇ Economic development is a legitimate public purpose for which public funds may be expended.[3] A city has the authority to purchase property for economic development and the purchase does not lose its public purpose merely because it involves a private actor. *See, e.g., Sublett v. City of Tulsa,* 405 P.2d 185 (Okla.1965).

The benefits of a university to the public have long been recognized.[4] The citizens of Enid will receive many benefits directly and indirectly from the City's purchase of Phillips University. The plan will directly benefit Enid's economy by the preservation of hundreds of jobs at the university and by the continued presence of students who spend in Enid. The scholarship fund will enable more area students, including many who cannot afford to live away from home, to attend a local university. Enid residents will enjoy free use of most of the campus while the facilities are leased to Phillips. The presence of a university will undoubtedly have a significant effect upon the city's ability to attract new industry and new jobs. Finally, Enid will continue to enjoy the social, educational and cultural benefits that flow from near access to high-er educational opportunities. The overwhelming benefits to the community of Enid bring the plan within the definition of public purpose.

## II.

▇ These public benefits also constitute consideration to the city and refute any argument that the plan is a gift or extension of credit to a private institution in violation of article 10, section 17, of the Oklahoma Constitution.[5] The city, through a public trust, purchased the Phillips campus and leased it back to the university. Appellants urge that because the lease is below the market rate for commercial property in Enid, there was inadequate consideration and the transaction should be viewed as a gift or a loan. This argument, however, ignores the public benefits to the community of Enid and the obligations Phillips assumed in the transaction.

Consideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party. *Sharp,* 49 Okl. at 228–29, 152 P. at 408. The lease payments are only one obligation assumed by Phillips in the leaseback arrangement. . Phillips sold its assets to the city at less than market value and agreed to limitations on the use and control of the sale proceeds.[6] Phillips may repur-

3. *See Way v. Grand Lake Ass'n, Inc.,* 635 P.2d 1010 (Okla.1981); *In re Southern Okla. Dev. Trust,* 470 P.2d 572 (Okla.1970); *Sublett v. City of Tulsa,* 405 P.2d 185 (Okla.1965); *Robinson v. Hal Johnson & Co.,* 206 Okla. 397, 243 P.2d 657 (1952). The Oklahoma Constitution authorizes the expenditure of public funds for economic development:

> Any incorporated town and any county may issue, by and with the consent of the majority of the qualified taxpaying voters of said municipality or county voting on the question at an election held for the purpose, bonds in sums provided by such majority at such election for the purpose of securing and developing industry within or near the said municipality holding the election, or within the county holding the election.

Okla. Const. art. 10, § 35(a). *See also* Okla. Const. art. 10, § 15(B) (authorizing the Oklahoma Center for the Advancement of Science and Technology to use public funds to promote economic development); Okla. Const. art. 10, § 42 (authorizing the Oklahoma Development Finance Authority to issue bonds to provide an economic development credit enhancement reserve fund).

4. *See Sharp v. City of Guthrie,* 49 Okl. 213, 229–30, 152 P. 403, 408 (1915). *See also* Okla. stat. tit. 11, § 22–125 (1981) (authorizing institutions in the state system of higher education to accept gifts of real estate from municipalities).

5. Okla. Const. art. 10, § 17:

> The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.

6. These controls include those present in FEEED's organization documents:

> (1) Twelve million dollars of the sale proceeds is held in trust by FEEED which administers the funds, pursuant to its stringent restricted fund by-laws, to be used for scholarships and the creation of a university center.

chase the campus, but only at fair market value if the property appreciates and at the sales price plus costs of bonds and other financing if the property depreciates. These obligations provide adequate consideration to demonstrate the plan is not a gift or loan to Phillips, but rather a legitimate plan to further economic development by attracting industry to a city that provides higher education opportunities.

Appellants cite *Veterans of Foreign Wars v. Childers*, 197 Okl. 331, 171 P.2d 618 (1946), as the landmark case on this issue. *Childers*, however, involved a legislative appropriation directly to the Veterans of Foreign Wars, a private agency assisting war veterans and their families, free of any control or management by any officer or agency of the state. The same cannot be said of the instant facts in which Phillips' sale of its assets to the city was subject to stringent restrictions on the use of the sale proceeds. The plan cannot be accurately described as a gift or a loan to Phillips.

### III.

Appellants also argue the plan benefits a sectarian institution in violation of article 2, section 5, of the Oklahoma Constitution.[7] Although Phillips has always been associated with and received support from the church, the plan does not violate this provision for two reasons: (1) sufficient consideration was received by the city so that the plan may not be viewed merely as a benefit to Phillips; and (2) Phillips, as presently organized, is not a sectarian institution.

In *Sharp*, 49 Okl. 213, 152 P. 403, the City of Guthrie conveyed property to be used for a university to a sectarian institution. The value of a university to the city and the obligations and responsibilities assumed by the institution were sufficient consideration to uphold the conveyance. This Court noted:

> The city having the right to sell the property, and the consideration being adequate, it would make no difference whether the grantee be a sectarian institution or not, for a sale upon a sufficient consideration would not be within the prohibition of section 5, art. 2, of the Constitution.

*Id.* at 230, 152 P. at 408. Similarly, the public benefits to the City of Enid and the obligations assumed by Phillips provide sufficient consideration to validate the instant transaction.

The plan may also be upheld under article 2, section 5, because Phillips is not a sectarian institution. The term "sectarian institution" includes "a school or institution of learning which is owned and controlled by a church and which is avowedly maintained and conducted so that the children of parents of that particular faith would be taught in that school the religious tenets of the church." *Gurney v. Ferguson*, 190 Okl. 254, 255, 122 P.2d 1002, 1003 (1941). Phillips is not owned, managed nor controlled by the church but does receive church influence and financial support.

This Court has long recognized the distinction between institutions with some religious influence and sectarian institutions

---

(2) Phillips must maintain an annual growth of twenty full-time students or FEEED may withhold a percentage of the scholarship funds.

(3) The investment criteria for the funds is specifically limited to conservative investments.

(4) If Phillips ceases to operate as a full-time accredited university in Enid or in the event of bankruptcy, FEEED may use the funds to establish a new university. If no new university is established, the funds return to EEDA for debt reduction or economic development.

Further obligations are found in the lease between EEDA and Phillips:

(1) Phillips agrees to pay all taxes, utilities, obligations, liens, insurance, maintenance and custodial services.

(2) The lease cannot be assigned.

(3) The agreement contains a stringent default section.

(4) Impermissible uses of trust funds are specified.

7. Okla. Const. art. 2, § 5:

No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such.

noting that "[i]t is not the exposure to religious influence that is to be avoided; it is the adoption of sectarian principles or the monetary support of one or several or all sects the state must not do." *Murrow Indian Orphans Home v. Childers,* 197 Okl. 249, 250, 171 P.2d 600, 602 (1946). While Phillips is clearly an institution with some religious influence, voluntary and court-ordered measures were implemented by Phillips to insure it could not be accurately viewed as sectarian.

The most dramatic measure was the separation of Phillips and the Phillips Graduate Seminary (seminary) into two distinct non-profit corporations. While the seminary may properly be considered a sectarian institution, it receives no public funds under the plan. The following additional measures were implemented to separate Phillips from the seminary: (1) The building housing the seminary, the Marshall building, was excluded from the city's purchase of the Phillips campus. Phillips retains ownership of the building and under the plan will lease it to the seminary. (2) The covenant between Phillips and the church was repudiated and replaced by a new Statement of Relationship which, as the trial court observed, completely avoids any possibility of entanglement between church and state. (3) The officers and trustees of Phillips and the seminary may never serve on each other's boards. (4) Public trust funds may never be used for any sectarian purposes including the teaching of religion and the maintenance repair or construction of buildings used for religious teaching or worship. A detailed accounting procedure is provided to enforce this prohibition. (5) General or operating funds of Phillips can no longer be used to fund discounted tuition or scholarships to children of the church's ministers. These provisions insure that public funds will be used not to benefit the seminary, but to carry forward a bargained-for plan to maintain a non-sectarian university in Enid.

Appellants also claim the plan unconstitutionally aids the seminary because "ev-ery sales tax dollar used for operation frees up additional [church] contribution money formerly used for operations support." However, the United States Supreme Court "has not accepted the recurrent argument that all aid is forbidden because aid to one aspect of an institution frees it to spend its other resources on religious ends." *Hunt v. McNair,* 413 U.S. 734, 743, 93 S.Ct. 2868, 2874, 37 L.Ed.2d 923 (1973). Adequate accounting procedures are provided under the plan to prevent the expenditure of public funds for sectarian purposes. Neither affiliation nor financial support from the church renders the plan unconstitutional. The plan is constitutionally acceptable under article 2, section 5, because sufficient consideration was exchanged in the transaction and because Phillips is not a sectarian institution. Article 2, section 5 of the Oklahoma Constitution constitutes a bonafide, separate, adequate, and independent ground upon which we rest our decision that the plan does not benefit a sectarian institution. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *Turner v. City of Lawton,* 733 P.2d 375, 381 (Okla. 1986).

### IV.

■ Appellants' final challenge claims the ordinance is unconstitutionally vague because the term "economic development" is too general and because the ordinance refers generally to the purchase of "certain land, buildings and equipment currently owned by Phillips University, Inc." A review of the ordinance, however, reveals the term "economic development" was defined to include marketing Enid to potential new industries. It also included creating new jobs and retaining existing jobs by attracting new industries and expanding existing industries. Clearly the term was adequately defined to communicate the purpose of the tax.

It was equally clear that tax proceeds would be used to purchase Phillips' assets. It was not necessary to submit a descrip-

tion and purchase price of each asset to the voters. The ordinance clearly articulated the projects and expenditures to which the tax would apply.[8] If the city attempts to use the tax for purposes other than those set forth in the ordinance, the taxpayers are protected by article 10, section 19, of the Oklahoma Constitution which requires that "no tax levied and collected for one purpose shall ever be devoted to another purpose."

## CONCLUSION

Economic development is a public purpose for which a municipality may expend public funds. A municipality may spend public funds for economic development in concert with private actors provided that constitutional requirements are met. Although a municipality may be flexible in structuring its plans for economic development, it must obtain adequate consideration and accountability from a private actor in exchange for the expenditure of public funds.

Enid's plan for economic development met these requirements. The city recognized the impact of Phillips on the local economy and developed the Phillips purchase plan to constitutionally further Enid's economic development.

AFFIRMED.

HARGRAVE, C.J., and LAVENDER, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in judgment.

8. In *Sublett*, 405 P.2d 185, this Court reviewed a taxpayer challenge alleging that the ordinance authorizing a vote on the issuance of bonds did not specify the particular industries that would locate on the planned facilities in violation of the Oklahoma Constitution article 10, section 16, requirement that "[a]ll laws authorizing the borrowing of money ... shall specify the purpose for which the money is to be used." *Sublett* held that "the stated purpose of the bonds must reflect for what purpose the money will be spent. But a *general statement* of the purpose complies with [article 10, section 16]." *Id.* at 197.

OPALA, V.C.J., and DOOLIN, J., dissent.

SIMMS, J., not participating.

A recent amendment of title 68 of the Oklahoma statutes now requires that a limited-purpose sales tax "shall describe with specificity the projects or expenditures for which the limited-purpose tax levy would be made." Okla. stat. tit. 68, § 2701(B) (Supp.1988). Although this statute does not apply to the challenged ordinance which was approved before the statute's enactment, the ordinance adequately specified the projects and expenditures for which the levy was to be made and would satisfy the new statute.