Dear Senator, Stipe.
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Is Section 22-159 of the Oklahoma Municipal Utility RevenueBond Act (11 O.S. 1991 and Supp. 1999, §§ 22-150-22-159)which authorizes municipalities to support public school systemslocated within the corporate limits of the municipality, inviolation of the provisions of Article X or Article XIII of theOklahoma Constitution?
¶ 1 Article I, Section 5 of the Oklahoma Constitution provides for the establishment and maintenance of a system of public schools within the State:
 Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control; and said schools shall always be conducted in English: Provided, that nothing herein shall preclude the teaching of other languages in said public schools.
Id.
¶ 2 Article XIII, Section 1 of the Oklahoma Constitution places the obligation of establishing and maintaining the system of public schools upon the Legislature. Section 1 states, "The Legislature shall establish and maintain a system of free public schools wherein all the children of the State may be educated."Id.
¶ 3 To carry out its duty, the Legislature has designed a system of funding public elementary and secondary education. The system relies primarily on two sources of revenue — local and state sources.
¶ 4 The largest local sources of revenue for financing public education are the various ad valorem taxes levied on real and personal property within the school district. Each county must levy a tax of four mills on the dollar valuation of all taxable property in the county for school purposes. See Okla. Const. art. X, § 9(b). Unless a different method is provided for by law, the proceeds of this levy must be apportioned among the county school districts based upon the legal average daily attendance for the preceding school year. See id.
¶ 5 The board of education of a school district may levy an additional tax of fifteen mills on the dollar valuation of all taxable property in the district. See Okla. Const. art. X, § 9(c). With voter approval, a district may also make an emergency levy of up to five mills and a local support levy of up to ten mills. See Okla. Const. art. X, § 9(d, d-1).
¶ 6 Additional ad valorem taxes may also be approved by voters for education-related purposes. Article X, Section 10 of the Oklahoma Constitution allows a levy of up to five mills for a building fund, which may be used for erecting or repairing school buildings and for purchasing furniture. See id.
¶ 7 The second primary source of revenue for public schools is the State. Article XIII, Section 1a, of the Oklahoma Constitution provides for the appropriation of funds for the support of public schools and states in part:
 Such moneys shall be allocated to the various school districts in the manner and by a distributing agency to be designated by the Legislature; . . . but the amount of state funds to which any school district may be entitled shall be determined by the distributing agency upon terms and conditions specified by the Legislature, and provided further that such funds shall be in addition to apportionments from the permanent school fund. . . .
¶ 8 The Legislature has provided for the most important source of State funding through the State Aid Formula found at 70 O.S.1991, § 18-101[70-18-101] and 70 O.S. Supp. 1999, § 18-201.1[70-18-201.1].
¶ 9 The Constitution places limitations on a city's ability to spend money. Both Sections 14 and 17 of Article X of the Oklahoma Constitution constrain city spending by embracing a "public purpose" requirement. Section 14(A) requires that public funds be expended for a public purpose. See id. Article X, Section 17 of the Constitution provides:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Id.
¶ 10 Section 17 was adopted for the purpose of preventing the investment of public funds in private enterprise. See Lawrencev. Schellstede, 348 P.2d 1078, 1082 (Okla. 1960). InBurkhardt v. City of Enid, 771 P.2d 608 (Okla. 1989), the Supreme Court upheld a plan in which a public trust provided economic development to the city by purchasing a privately owned college campus and leasing it back to its former owners. The public trust had as its beneficiary the City of Enid. In upholding the plan under Sections 14 and 17 of Article X, the Court held that, "[e]conomic development is a legitimate public purpose for which public funds may be expended." Id. at 611. InState ex rel. Brown v. City of Warr Acres, 946 P.2d 1140
(Okla. 1997), the Supreme Court was again asked to review within the context of Sections 14 and 17 of Article X, a city's economic development plan. The Court made the following observation:
 The City Council is the legislative body of a city. As such, it is its function to determine what expenditures are designed to promote the public good and welfare of the city and its inhabitants. It has no limitations as to expenditures, "save and except those which are expressly placed on its exercise by the Constitution of the State."
 The term "public purpose" shall not be construed "in a narrow or restrictive sense." Courts are to give great deference to a legislative body's determination that a particular project will serve a public purpose. In reviewing that determination, "courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy." Such a determination should be reversed only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable.
Id. at 1144 (citations omitted) (emphasis added).
¶ 11 In Burkhardt, the Court made the following observation regarding the presence of a university within a community:
 The benefits of a university to the public have long been recognized. The citizens of Enid will receive many benefits directly and indirectly from the City's purchase of Phillips University. The plan will directly benefit Enid's economy by the preservation of hundreds of jobs at the university and by the continued presence of students who spend in Enid. The scholarship fund will enable more area students, including many who cannot afford to live away from home, to attend a local university. Enid residents will enjoy free use of most of the campus while the facilities are leased to Phillips. The presence of a university will undoubtedly have a significant effect upon the city's ability to attract new industry and new jobs. Finally, Enid will continue to enjoy the social, educational and cultural benefits that flow from near access to higher educational opportunities. The overwhelming benefits to the community of Enid bring the plan within the definition of public purpose.
Burkhardt, 771 P.2d at 611 (footnote omitted).
¶ 12 Cities, along with other political subdivisions, are subject to constitutional limitations as to the amount of, and manner in which, debt may be incurred. Cities and towns in Oklahoma are authorized to issue bonds under the provisions of: Article X, Section 26 (General Obligation Bonds); Section 27 (Public Utility Bonds); Section 27A (Water Facilities) and Section 27B (Public Utility Revenue Bonds). Section 26 requires a sixty per cent (60%) voter approval prior to the issuance of bonds and limits the issuer's ability to become indebted to a percentage of the taxable value of property located within the municipality. See Okla. Const. art. X, § 26(a). Because of these limitations, cities typically issue bonds pursuant to Article X, §§ 27, 27A or 27B. Sections 27 and 27B only require a majority vote to authorize the issuance of bonds. See Okla. Const. art. X, §§ 27, 27B(2).
¶ 13 The Oklahoma Municipal Utility Revenue Bond Act, (11 O.S.Supp. 1999, §§ 22-150-22-159) authorizes municipalities to issue obligations to finance, or refinance, public utilities owned or to be owned by a municipality. In 1999 the Legislature amended the Oklahoma Municipal Utility Revenue Bond Act by adding Section 22-159 to Title 11. Section 22-159 provides:
 Municipalities may support any public school system located in whole or in part within the corporate limits of the municipality, including without limitation by the expenditure of municipal revenues for construction or improvement of public school facilities. In furtherance of municipal support for any public school system, as authorized by this section, the municipal governing body may take all actions necessary to effectuate such support.
Id.
¶ 14 The above-quoted provision is a broad authorization for municipalities to "support" public school systems located within the municipality. The authority of the Legislature extends to all rightful subjects of Legislation pursuant to Article V, Section36 of the Oklahoma Constitution. See id. Unless there is a specific constitutional prohibition, the Legislature has the right and responsibility to declare fiscal policy. See In reOklahoma Capitol Improvement Auth., 958 P.2d 759, 763 (Okla. 1998). If two interpretations are possible, one of which would render a statute unconstitutional, a court is bound to give the statute an interpretation that will render it constitutional, unless constitutional infirmity is shown beyond a reasonable doubt. See Gilbert Cent. Corp. v. State, 716 P.2d 654, 658
(Okla. 1986).
¶ 15 A city is authorized by 68 O.S. Supp. 1999, § 2701[68-2701](A) to assess taxes for such general and specific purposes of the municipal government as the Legislature may levy and collect for purposes of State government. The pertinent provision of the statute states: "Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government except ad valorem property taxes." Id.
¶ 16 Until the passage of Section 22-159 of Title 11, a city was not directly authorized to provide funding for school buildings. With the adoption of 22-159 the Legislature has determined that schools may be supported by municipalities.[1] See id. It cannot be doubted that a viable well-funded school system with proper facilities provides a benefit to a municipality. Therefore, the levy of taxes and an expenditure to support the schools meets the public purpose requirement found in Article X, §§ 14, 17 of the Oklahoma Constitution.
¶ 17 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Title 11, Section 22-159 of the Oklahoma Municipal AuthorityUtility Revenue Bond Act (11 O.S. 1991 and Supp. 1999, §§22-150-22-159), which allows municipalities to support localschool systems located in whole or part within the corporatelimits of the municipality, is a valid exercise of legislativeauthority pursuant to Article V, Section 36 of the OklahomaConstitution and does not on its face violate the provisions ofArticle X or Article XIII of the Oklahoma Constitution.
W.A. DREW EDMONDSON Attorney General of Oklahoma
DOUGLAS F. PRICE Assistant Attorney General
[1] The Supreme Court has held that the public school system is a matter of state and not municipal concern. See Board of Educ.v. State, 109 P. 563, 566 (Okla. 1910). At the time Board ofEducation was decided, the Legislature had conferred no power to municipalities with regard to schools. This changed with the adoption of 70 O.S. Supp. 1999, § 22-159[70-22-159].