Dear Auditor and Inspector McMahan
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 Pursuant to 62 O.S. 2001 Supp. 2002, §§ 2001 -2013,
 1. May Rural Economic Action Plan ("REAP") funds be used to purchase tangible personal property for private entities, such as community centers, senior centers, volunteer fire departments and community associations?
 2. May REAP funds be used to build, renovate, repair or equip buildings for private entities?
 3. If so, and the real property on which the facility to be renovated is located is owned by a private entity, or there is a long-term lease to a public entity, which of those two entities subleases it to the entity receiving the REAP funds?
¶ 1 Your questions relate to the proper spending of funds made available pursuant to the Rural Economic Action Plan ("REAP") of 1996. Before turning to the specifics of your questions, a general overview of the intent and purpose of REAP is in order.
 I. The Rural Economic Action Plan Of 1996
¶ 2 REAP is set forth at 62 O.S. 2001 Supp. 2002, §§2001-2013. REAP actually provides for two separate funds: the Rural Economic Action Plan Water Projects Fund[1] and the Rural Economic Action Plan grant program. In this Opinion we address only the Rural Economic Action Plan grant program.
¶ 3 Noting the economy in rural areas of the State, the Legislature enacted REAP in an effort to stimulate economic development. 62 O.S. 2001, § 2001[62-2001]. The statute, in pertinent part, specifically states:
 [T]he Legislature hereby establishes a procedure pursuant to which public funds may be used in a flexible manner for the general improvement of living and working conditions in predominantly rural areas of the State of Oklahoma for which an identifiable need has been determined.
Id.
¶ 4 Section 2003 of Title 62 provides that monies are appropriated to the Oklahoma Water Resources Board for the purpose of funding REAP. Id. § 2003(A). The monies are distributed to eleven organizations:
 1. Association of Central Oklahoma Governments (ACOG);
 2. Association of South Central Oklahoma Governments (ASCOG);
 3. Central Oklahoma Economic Development District (COEDD);
 4. Eastern Oklahoma Economic Development District (EOEDD);
 5. Grand Gateway Economic Development Association (GGEDA);
6. Indian Nations Council of Governments (INCOG);
7. Kiamichi Economic Development District (KEDDO);
8. Northern Oklahoma Development Association (NODA);
9. Oklahoma Economic Development Association (OEDA);
 10. Southern Oklahoma Development Association (SODA); and
 11. South Western Oklahoma Development Authority (SWODA).
Id. § 2003(B).
¶ 5 The monies may not be expended for the benefit of cities or towns with a population in excess of seven thousand (7,000) persons. Id. § 2003(C). Any municipality may enter into an agreement with one of the eleven organizations to apply for available funds if the municipality is located within the area served by the organization. Id. Also, any of the eleven organizations may apply for a grant to be used for the benefit of an unincorporated area or county within the area served by that organization. Id. § 2003(D).
¶ 6 Sections 2004 and 2006 of Title 62 provide for the REAP fund established within the State Treasury, and division of the funds among the eleven organizations. Section 2007 sets forth the eligibility requirements to obtain REAP funding. For instance, in addition to the eleven organizations named above, the following are eligible for funding:
 A voluntary association of Oklahoma local governmental jurisdictions or another legal entity,
including a public trust or a nonprofit corporation or other entity which performs functions for the benefit of or which exists for the primary benefit of Oklahoma local governmental jurisdictions. . . .
Id. § 2007(A) (emphasis added).
¶ 7 Section 2008 provides that the governing boards of eligible entities "shall develop a plan for the use of available funds for the economic development of areas included within its respective jurisdiction." Id. Section 2008 then sets forth a list of economic development projects. While the list expressly states it is not all inclusive, it does not include the precise type of projects about which you ask. See id. The list provides:
 1. Rural water quality projects, including acquisition, treatment, distribution and recovery of water for consumption by humans or animals or both;
 2. Rural solid waste disposal, treatment or similar projects;
 3. Rural sanitary sewer construction or improvement projects;
 4. Rural road or street construction or improvement projects;
 5. Provision of health care services, including emergency medical care, in rural areas;
6. Provision of rural fire protection services;
 7. Construction or improvement of telecommunication facilities or systems;
 8. Improvement of municipal energy distribution systems;
 9. Expenditures designed to increase the employment level within the jurisdiction of the entity; and
 10. Such other purposes as may be certified pursuant to an affirmative vote of two-thirds () of the governing board of an entity described by subsection A or B of Section 2007 of this title.
Id.
¶ 8 Subsection A of Section 2009 requires that for an eligible entity to receive funds it must file its organizational plan with the State Auditor and Inspector, and Section 2010 states no entity which qualifies shall be required to provide matching funds.
¶ 9 Express limitations on the expenditure of REAP funds are provided at 62 O.S. 2001, § 2011[62-2011]. This section provides that no REAP funds may be used "to pay any administrative expenses of the entity requesting the funds." Id. § 2011(A). This subsection further provides that the State Auditor and Inspector "shall monitor expenditures . . . to ensure compliance with the provisions of this section." Id.
Further,
 Misuse of funds by an entity shall disqualify the entity from further funding for a period of one (1) year from the date as of which any report by the State Auditor and Inspector is issued revealing a violation of the requirements of this section.
Id.
¶ 10 An entity which violates this section of law is liable for treble the amount of funds which were impermissibly used. Id. § 2011(B). This section further states:
 Upon verification by the State Auditor and Inspector's office that an entity is qualified to receive funds for a purpose authorized by this act, the entity shall be eligible for an initial planning expenditure payment of not to exceed five percent (5%) of the amount contained in the account created for the entity pursuant to Section 2006 of this title.
Id. § 2011(C).
¶ 11 REAP last provides:
 The expenditures from the Rural Economic Action Plan Fund and other expenditures governed by this act, if made in accordance with the requirements of this act, shall be construed as an expenditure of public funds in furtherance of governmental functions and for the purpose of conferring general and uniform benefits resulting from the expenditures upon the residents and other legal entities located in areas subject to the jurisdiction of the entities described in subsection A or B of Section 2007 of this title.
Id. § 2013 (emphasis added) (footnote omitted).
 II. Expenditure Of Reap Funds
¶ 12 Your first two questions ask about the types of purchases that can be made with REAP funds. You ask whether REAP funds may be used to purchase tangible personal property for private entities and whether REAP funds may be used to build, renovate, repair or equip buildings for private entities. As stated above, Section 2008 sets forth a list of acceptable economic development projects and ends with a broad and general category, "[s]uch other purposes as may be certified pursuant to an affirmative vote of two-thirds () of the governing board. . . ." Id. § 2008(10). Therefore, while the statutory list does not specifically provide that REAP funds may be used to purchase tangible personal property and/or used to build, renovate, repair or equip buildings for private entities, REAP does not prohibit such expenditures. Of course, under Article X, Sections 14 and 15
of the Oklahoma Constitution any particular purchase must have a public purpose and be in furtherance of a governmental function as opposed to benefitting private individuals or groups.
A. Public Funds Must be Expended for a Public Purpose.
¶ 13 Generally, Article X, Section 14(A) of the Oklahoma Constitution requires that the expenditure of public funds be in furtherance of a public purpose, and Section 15(A) prohibits the State from making a gift. Article X, Sections 14 and 15 are generally construed together. A "public purpose," however, need not be for the use and benefit of the entire public, but rather may be used for a segment of the public. Way v. Grand LakeAss'n, 635 P.2d 1010, 1016 (Okla. 1981) (citation omitted). The term "public purpose" is not construed in "a narrow and restrictive sense." Helm v. Childers, 75 P.2d 398, 399 (Okla. 1938). Courts give great deference to a legislative body's determination that a particular project serves a public purpose, and will reverse such determination "only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable."State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140,1144 (Okla. 1997).
B. Economic Development is a Legitimate Public Purpose.
¶ 14 The Oklahoma Supreme Court has reviewed economic development plans involving public and private entities. In Cityof Warr Acres, the court reviewed an economic development plan entered into between a private entity and the City of Warr Acres. The court noted that "[e]conomic development was recognized as a legitimate public purpose in Burkhardt v. City of Enid,771 P.2d at 611." City of Warr Acres, 956 P.2d at 1144. In Burkhardtv. City of Enid, 771 P.2d 608, 614 (Okla. 1989), the court upheld the economic plan whereby the City of Enid purchased a private university. The court found that Sections 14 and 17 of Article X of the Oklahoma Constitution were not violated by the plan because "[e]conomic development is a legitimate public purpose for which public funds may be expended" and the plan did not "lose its public purpose merely because it involve[d] a private actor." Id. at 611.
 The plan in Burkhardt met the public purpose requirement. The city maintained control jointly with the university over operating capital and scholarship funds. The plan was not a gift or loan to a private enterprise because there was adequate consideration from the private actor in the form of direct economic benefits from the university's presence and the obligations it assumed under the plan.
City of Warr Acres, 946 P.2d at 1144.
¶ 15 Likewise, the Supreme Court found a public purpose and adequate consideration in the economic plan between the City of Warr Acres and the private entity, because the lease at issue contained provisions which granted the City of Warr Acres adequate consideration. The court did not, and will not, determine whether a particular transaction is the best financial transaction for a public body. Rather, the court stated:
 The structure of economic development arrangements must change and grow over time to reflect and respond to increased commercial competition and complexities. An economic development plan, in whatever form it takes, will be upheld so long as it serves a public purpose and otherwise meets constitutional requirements.
 By passage of Resolution 214, the Warr Acres City Council determined that the proposed economic development plan would promote a legitimate public purpose by increasing sales tax revenues for the City of Warr Acres, adding new jobs, retaining existing jobs, and promoting collateral economic growth and development. The essential question presented to this Court, as well as to the trial court, is not whether the details of the plan match those in Burkhardt, but rather whether the plan served a legitimate public purpose. It is not for the courts to second guess the wisdom of the City Council in agreeing to the details of the plan. This Court need not agree that it was the best arrangement or even a good arrangement. If the economic development plan served a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the City of Warr Acres and its citizens, then it withstands constitutional challenge.
City of Warr Acres, 946 P.2d at 1144-45.
¶ 16 As stated, courts give great deference to legislative decisions regarding expenditures made for a public purpose. With REAP, the Legislature has expressly provided that any REAP expenditure promotes a public purpose. REAP states:
 The expenditures from the Rural Economic Action Plan Fund . . ., if made in accordance with the requirements of this act, shall be construed as an expenditure of public funds in furtherance of governmental functions. . . .
62 O.S. 2001, § 2013[62-2013].
¶ 17 In accordance with the statutory guidelines of REAP and the general "public purpose" guidelines outlined by the Supreme Court in both Burkhardt and City of Warr Acres, REAP funds may only be used in furtherance of governmental functions. In other words, REAP funds may not be used to purchase tangible personal property for private entities unless that tangible personal property is used for a public purpose. Likewise, REAP funds may not be used to build, renovate, repair or equip a building for a private entity unless the building is used for a public purpose. Of course, any particular purchase or renovation must be evaluated on a case-by-case basis and as such, cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, §18b[74-18b](A)(5).
 III. Lease To Governmental Entity
¶ 18 You last ask about the contractual relationship between a private owner and the owner's lessee of a facility which is benefitting from REAP funds, when the real property on which the facility to be renovated is located, is owned by a private entity or there is a long-term lease to a public entity. A public entity may not lease public property to a private individual or entity for a non-public purpose without adequate consideration. Okla. Const. art. X, § 17; A.G. Opin. 81-190, 354. Similarly, a private individual or entity may not use public monies for non-public renovations. Okla. Const. art. X, §§ 14, 15.
¶ 19 The actual parties to the lease agreement, however, are not necessarily indicative of the public purpose or governmental function provided by the property. Rather, the focus must remain on the expenditure of public funds in relation to the use of the property. Title to the real property does not determine whether the property is being used for the benefit of local government jurisdictions. In fact, Section 2007(A) of REAP makes public trusts, nonprofit corporations, or any other entity "which performs functions for the benefit of or which exists for the primary benefit of Oklahoma local governmental jurisdictions" eligible to receive REAP funds. Id. Regardless of whether a private entity or individual owns the real property, or whether the property is under a long term lease to a public entity, the contractual relationship between the parties involved in the transaction must provide adequate consideration such that a gift is not made to a private entity. For instance, a lease may provide that if the property reverts to a purely private use, the public entity will receive consideration. It is impossible to foresee the infinite possibilities of appropriate contractual relationships under which REAP funds may be used for the benefit of Oklahoma local governmental jurisdictions. The contractual obligations imposed on the private entity will vary significantly based on the specifics of any particular situation and will undoubtedly affect the "public purpose" analysis. The factual specifics of the particular parties to such an agreement and the terms of the agreement will necessarily vary from instance to instance. Therefore, any determination as to the appropriate parties to a lease agreement is a question of fact and not appropriate for an Attorney General's Opinion. 74 O.S. 2001, §18b[74-18b](A)(5).
 IV. Conclusion
¶ 20 REAP is a broad legislative enactment for the purpose of stimulating economic development in rural areas. 62 O.S. 2001, §2001[62-2001]. Eleven local governmental organizations are expressly eligible for funding, together with "a public trust or a nonprofit corporation or other entity which performs functions for the benefit of or which exists for the primary benefit of Oklahoma local governmental jurisdictions." Id. § 2007(A). The funds may be used for a wide array of local projects which further governmental functions and/or confer benefits upon residents of the community. Id. § 2013. Tangible personal property may not be purchased with REAP funds unless the property is used for or furthers a public purpose. Okla. Const. art. X, §§14, 15. Likewise, REAP funds may not be used to build, renovate, repair or equip buildings for private entities, unless the buildings are used in furtherance of some governmental function.Id. The focus on the expenditure of public funds rests with the use of the property and the consideration flowing between the parties, rather than the manner in which the property is held.74 O.S. 2001, § 18b[74-18b](A)(5).
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Generally, public funds may not be used for a private purpose. Okla. Const. art. X, §§ 14, 15.
 2. Rural Economic Action Plan (REAP) funds may not be used to purchase tangible personal property for private entities, such as community centers, senior centers, volunteer fire departments and community associations unless the personal property is used for a public purpose or in furtherance of a local governmental function, and the funds are acquired and expended in compliance with 62 O.S. 2001 Supp. 2002, §§ 2001-2013 and Okla. Const. art. X, §§ 14, 15.
 3. REAP funds may not be used to build, renovate, repair or equip buildings for private entities unless the buildings are used for a public purpose or in furtherance of a local governmental function, and the funds are acquired and expended in compliance with 62 O.S. 2001 Supp. 2002, §§ 2001-2013 and Okla. Const. art. X, §§ 14, 15.
 4. The manner in which real property is titled may not be indicative of whether the property is being used for the benefit of local government jurisdictions. Regardless of whether a private entity or individual holds title to the real property, or whether the property is under a long term lease to a public entity, the contractual relationship between the parties must provide adequate consideration such that a gift is not made to a private entity. Okla. Const. art. X, §§ 14, 15. The factual specifics of such an agreement will necessarily vary from instance to instance. Therefore, any determination as to the appropriate parties to a lease agreement is a question of fact which cannot be answered by an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 GRETCHEN ZUMWALT-SMITH Assistant Attorney General
[1] See 2003 Okla. Sess. Law ch. 481, § 1(A) (amending 62O.S. Supp. 2002, § 2002[62-2002](A)).