Dear Honorable Bill Brown,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question: Cancities pledge future sales tax revenues, subject to annualappropriation, for purposes of economic development pursuant to a "TaxRebate Agreement" outside the parameters of the Local Development Act?
 Introduction
¶ 1 "The point to remember is that what the government gives it must first take away." — John S. Coleman. Your question contemplates the legality of tax rebate agreements.[1] In Shinn v. Oklahoma AlcoholicBeverage Control Board, 397 P.2d 157, 160 (Okla. 1964), the Oklahoma Supreme Court stated, "A rebate is something that is returned to a purchaser out of the purchase price of goods to accomplish a reduction of the purchase price." Id.[2]
 The Collection of Municipal Taxes
¶ 2 Municipalities may impose taxes pursuant to 68 O.S.Supp. 2009, § 2701[68-2701], which in pertinent part provides:
 A. Any incorporated city or town in this state is hereby authorized to assess, levy, and collect taxes for general and special purposes of municipal government as the Legislature may levy and collect for purposes of state government, subject to the provisions of subsection F of this section, except ad valorem property taxes. Provided:
 1. Taxes shall be uniform upon the same class subjects, and any tax, charge, or fee levied upon or measured by income or receipts from the sale of products or services shall be uniform upon all classes of taxpayers;
 . . . .
 7. Any revenues derived from a tax authorized by this subsection not dedicated to a limited purpose shall be deposited in the municipal general fund.
 B. A sales tax authorized in subsection A of this section may be levied for limited purposes specified in the ordinance levying the tax. Such ordinance shall be submitted to the voters for approval as provided in Section 2705 of this title. . . . Such ordinance shall describe with specificity the projects or expenditures for which the limited-purpose tax levy would be made. The municipal governing body shall create a limited-purpose fund and deposit therein any revenue generated by any tax levied pursuant to this subsection. . . . Money in the limited-purpose tax fund shall be expended only as accumulated and only for the purposes specifically described in the taxing ordinance as approved by the voters.
Id. (emphasis added). Any municipal tax must be approved by a vote of the people pursuant to 68 O.S.Supp. 2009, § 2705[68-2705], which in pertinent part provides:
 A. Any taxes which may be levied by an incorporated city or town as authorized by the provisions of Section 2701 et seq. of this title shall not become valid until the ordinance setting the rate of such tax shall have been approved by a majority vote of the registered voters of such incorporated city or town voting on such question at a general or special municipal election.
Id. Therefore, municipalities may only impose taxes after a vote of the people.
 The Expenditure of Municipal Taxes
¶ 3 Article X, Section 14(A) of the Oklahoma Constitution requires that the expenditure of public funds by a municipal government be in furtherance of a public purpose, while Section 17 prohibits a city from "the investment of public funds in private enterprises." Lawrence v.Schellstede, 348 P.2d 1078, 1082 (Okla. 1960). A "public purpose," however, need not be for the use and benefit of the entire public, but rather may be used for a segment of the public. "A use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality." Way v. Grand Lake Ass'n, 635 P.2d 1010, 1016
(Okla. 1981) (citation omitted). The term "public purpose" is not to be construed in "a narrow and restrictive sense":
 The meaning of "public purposes" for which governmental exaction of money may be had is not within a narrow and restricted sense. At any rate the courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy. In such instances the decision of the legislature is accepted as final.
Id. (citing Helm v. Childers, 75 P.2d 398, 399 (Okla. 1938)). Courts give great deference to a legislative body's determination that a particular project serves a public purpose, and will reverse such determination "only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable." State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140,1144 (Okla. 1997) (citation omitted).
 Municipal Economic Development Held to Be a Legitimate Public Purpose
¶ 4 The Oklahoma Supreme Court has reviewed economic development plans involving public and private entities. In Burkhardt v. City of Enid,771 P.2d 608, 613-14 (Okla. 1989), the court upheld an economic development plan whereby the City of Enid purchased a private university through a public trust and leased the property back to the private university. The economic development plan was funded by three-quarters of a one percent sales tax, which was approved for this purpose by the voters of the City of Enid. The court, citing Way, found that Sections 14
and 17 of Article X of the Oklahoma Constitution were not violated by the plan because "[e]conomic development is a legitimate public purpose for which public funds may be expended" and the plan did not "lose its public purpose merely because it involve[d] a private actor." Id. at 611.
¶ 5 In City of Warr Acres, the Oklahoma Supreme Court reviewed an economic development plan entered into between a private entity and the City of Warr Acres. The court noted that "[e]conomic development was recognized as a legitimate public purpose in Burkhardt v. City of Enid,771 P.2d at 611." Id. at 1144. The city provided, as a financial incentive, a United States Treasury Strip Security, along with the interest the investment would earn over a fifty-year period. Id.
at 1142. The security was transferred to an escrow account under a resolution adopted by the Warr Acres City Council, and used to provide an incentive for the location of a large business enterprise in the city, which would generate substantial local sales taxes. Id. at 1142-43.
¶ 6 As in Burkhardt, the Supreme Court found a public purpose and adequate consideration in the economic plan between the City of Warr Acres and the private entity, because the lease at issue contained provisions that granted the City of Warr Acres adequate consideration. The court did not, and will not, determine whether a particular transaction is the best financial transaction for a public body. Rather, the court stated:
 The structure of economic development arrangements must change and grow over time to reflect and respond to increased commercial competition and complexities. An economic development plan, in whatever form it takes, will be upheld so long as it serves a public purpose and otherwise meets constitutional requirements.
 By passage of Resolution 214, the Warr Acres City Council determined that the proposed economic development plan would promote a legitimate public purpose by increasing sales tax revenues for the City of Warr Acres, adding new jobs, retaining existing jobs, and promoting collateral economic growth and development. The essential question presented to this Court, as well as to the trial court, is not whether the details of the plan match those in Burkhardt, but rather whether the plan served a legitimate public purpose. It is not for the courts to second guess the wisdom of the City Council in agreeing to the details of the plan. This Court need not agree that it was the best arrangement or even a good arrangement. If the economic development plan served a legitimate public purpose of promoting the general welfare, economic security, and prosperity of the City of Warr Acres and its citizens, then it withstands constitutional challenge.
Id. at 1144-45.
 Rebates in Oklahoma
¶ 7 The sample tax rebate agreement provided with your request purports to allow a retailer to receive back from the city a portion of the municipal sales tax receipts it collects, to reimburse certain costs of development. This is similar to rebate programs administered through the Oklahoma Tax Commission. For instance, the "Compete with Canada Film Act," 68 O.S. 2001 Supp. 2009, §§ 3621 — 3626, created the Oklahoma Film Enhancement Rebate Program. 68 O.S.Supp. 2009, § 3624[68-3624](A). A production company can make a rebate claim for a certain percent of "documented expenditures made in Oklahoma directly attributable to the production of a film, television production, or television commercial."Id. However, eligibility requirements must be met. See id. § 3624(D). Approved claims are paid by the Oklahoma Tax Commission from the Oklahoma Film Enhancement Rebate Program Revolving Fund, "a continuing fund, not subject to fiscal year limitations." Id. § 3625(A). The Compete with Canada Film Act is scheduled to terminate effective July 1, 2014. Id.
§ 3626. See also In re Okla. Dev. Fin. Auth., 89 P.3d 1075, 1077 (Okla. 2004) (qualifying establishments can seek reimbursements "for a portion of the costs of expanding and re-tooling their existing manufacturing plants in Oklahoma" under the Oklahoma Quality Jobs Incentive Leverage Act (68 O.S.Supp. 2009, §§ 3651[68-3651] — 3660)). Most of the reimbursement funds are administered by the Oklahoma Tax Commission and include funds from the Oklahoma Quality Jobs Program Act, withholding taxes from employees of qualifying establishments, guaranty agreements from qualifying establishments, and revenues collected from Oklahoma corporate income taxes. Id. at 1079 — 80.
¶ 8 The Oklahoma Municipal Code grants a city broad powers with regard to municipal functions such as expenditures for economic development. "The municipal governing body may enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions." 11 O.S. 2001, § 14-101[11-14-101]. While Oklahoma law does not expressly authorize a city to pledge future sales tax revenues that are subject to annual appropriation for "public purposes" concerning economic development, both the Oklahoma Constitution and the statutes grant a city broad powers to expend monies for "public purposes."
 Yearly Appropriations
¶ 9 The sample tax rebate agreement which was provided for review requires an annual appropriation by the city council. Article X, Section 26 of the Oklahoma Constitution in pertinent part provides:
 (a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein. . . .
Id. "The purpose of art. 10, § 26 is to force cities and other political subdivisions to operate on a cash basis and to prevent indebtedness extending beyond one year without a vote of the public." Okla. City UrbanRenewal Auth. v. Med. Tech. Research Auth., 4 P.3d 677, 686-87 (Okla. 2000). "In art. 10, § 26, the people reserve to themselves the right to approve any and all debts that will be paid with taxes levied and collected in subsequent fiscal years, which includes the right to approve the tax to be levied in subsequent years." Muskogee Urban Renewal Auth.v. Excise Bd., 899 P.2d 624, 633 (Okla. 1995).
¶ 10 As stated above, courts give great deference to legislative decisions regarding expenditures made for a public purpose. Municipal governments can enter into economic development agreements in two different ways. First, as in the Burkhardt case, revenue can be dedicated to a limited purpose for a defined period of time if approved by a vote of the people in an election. Second, as in the City of Warr Acres case, the municipality's governing body can make a current year appropriation. In either case, the expenditure must be for a public purpose. Municipal governments may, outside the Local Development Act, contract to pledge future sales tax revenues that are subject to annual appropriation, for "public purposes" concerning economic development. As in City of WarrAcres, their decision that an expenditure, subject to annual appropriation, serves a public purpose must not be manifestly arbitrary, capricious or unreasonable. Id. at 1144. What a public purpose might entail is a question of fact to be evaluated on a case-by-case basis, and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b[74-18b] (A)(5).
¶ 11 It is, therefore, the official Opinion of the Attorney Generalthat:
 Municipal governments may, outside the Local Development Act, use tax rebate agreements to pledge future sales tax revenues that are subject to annual appropriation for "public purposes" concerning economic development. Their decision that the expenditure serves a public purpose must not be manifestly arbitrary, capricious or unreasonable. Okla. Const. art. X, § 14(A); Way v. Grand Lake Ass'n, 635 P.2d 1010, 1016 (Okla. 1981); Burkhardt v. City of Enid, 771 P.2d 608, 611 (Okla. 1989); State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997). What a public purpose might entail is a question of fact to be evaluated on a case-by-case basis, and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
DAVID L. KINNEY Assistant Attorney General
[1] As an example, a tax rebate agreement was provided for review with your request and is on file with the Attorney General's office.
[2] This office has previously opined on the permissible statutory expenditures that may be reimbursed to property owners by a municipality under the Local Development Act, 62 O.S. 2001 Supp. 2009, §§ 850 — 869, in A. G. Opin. 09-13. *Page 1